## St. Louis, Jacksonville & Chicago R. R. Co.
### v.
## Trustees of Illinois Institution for the Education of the Blind.

1. STATUTE — *construed* — *grant*. Although the language of a statute may be sufficiently comprehensive to embrace any property owned by the State, still it will not be construed to include property used by the State for a specific purpose. In such a case it cannot be inferred, that such was the intention of

the legislature, and all statutes must be construed according to the intention of the body enacting them.

2. Where the general assembly in granting a railroad charter, authorized the company to enter upon, take possession of, and use all and singular any lands, streams and materials of every kind for the location of the road, depots, etc., for the construction of the road; and it contained a provision, that "all such lands, materials and privileges belonging to the State, are hereby granted to said corporation for said purposes;" — *Held,* that the grant does not include the ground connected with, and used by the State for the education of the blind, although adjoining the road, and convenient for its use.

3. Where the general assembly has made such a grant, and subsequently, by another act, grants the company a portion of the right of way to an old and abandoned railroad belonging to the State, which is upon the line of the road of the company, it will be inferred, that such subsequent grant is a legislative construction of the prior grant, from which it appears, the general assembly did not understand, that the former grant embraced property belonging to the State, not used by the State, although convenient to the construction of the road, much less to embrace property appropriated to other purposes, and in the actual use of the State.

Appeal from the Circuit Court of Sangamon county; the Hon. Edward Y. Rice, Judge, presiding.

This was a proceeding commenced by the St. Louis, Jacksonville and Chicago Railroad company before a justice of the peace of Morgan county, for the purpose of condemning a portion of the grounds owned and used by the State, for the maintenance of the institution for the education of the blind, situated in the city of Jacksonville, for depot purposes.

Three commissioners were appointed to examine and condemn the property. They reported that they had condemned for the use of the road a strip on the west side of the grounds of the institution. From this assessment the trustees of the institution appealed to the Circuit Court of Morgan county. Afterward the case was removed by change of venue to the Circuit Court of Sangamon county.

A trial was subsequently had in that court on an agreed state of facts, when the court quashed the proceeding and reversed the condemnation made by the three commissioners. And the case is brought to this court on appeal for the purpose of reversing the judgment of the Circuit Court.

Messrs. Morrison & Epler, for the appellants.

Mr. Henry E. Dummer, for the appellees.

Mr. Chief Justice Walker delivered the opinion of the Court:

It appears that the Jacksonville, Alton and St. Louis, and the Tonica and Petersburg railroads, were consolidated under the general law of this State regulating such organizations, and thereby became the St. Louis, Jacksonville and Chicago Railroad company. By an act of the general assembly approved February 13, 1863, this consolidation and the first election of its officers were declared legal and valid. This act also declares that the company thus formed shall enjoy, possess and exercise all of the privileges, immunities and franchises, which were possessed by either and both of the companies entering into and forming the consolidation, and vests in the new company all of the property, rights, credits and choses in action previously held and owned by the two companies entering into the new organization.

At the session of 1853, of the general assembly, a charter was granted to construct a railroad from Jacksonville to Alton under the name of the Jacksonville and Carrolton railroad. At the session of 1857, by an amendatory act, the name of the company was changed to that of the "Jacksonville, Alton and St. Louis Railroad company." By the third section of this amendatory act, the company were authorized to receive voluntary grants of lands or other property for the use of the road. "Also to enter upon, take possession of and use, all and singular any lands, streams and materials of every kind, for the location of depots and stopping stages, for the purpose of constructing bridges, dams, embankments, excavations, station grounds, spoil banks, turn-outs, engine-houses, shops and other buildings necessary for the construction, completing," etc., of the road. And this section further provides that, "All such lands, materials and privileges belonging to the State, are hereby granted to said corporation for said purposes."

20 — 43d Ill.

It is under this enactment that appellants claim the right to appropriate a portion of the grounds used and occupied by the State for the institution for the education of the blind. These premises are owned by the State, on which buildings and other improvements have been made at large expense from the State treasury, and it is maintained at a large expense by annual appropriations. It is regarded as an institution deserving the care of the State, and requiring its support. Nor has the State, so far as we are aware, ever manifested the slightest disposition to abandon it, as to transfer it to other hands. It is one of the institutions to which our citizens look with pride, and no limited degree of satisfaction. It is supposed to confer upon the community great benefits, that could not be attained by any other practical means. It confers all of the benefits of a good education upon a class of unfortunates, the most of whom would otherwise remain wholly uneducated. We are compelled therefore to conclude, that the State has no intention of abandoning its fostering care and support of this institution.

The language of this enactment is broad and comprehensive, and would literally embrace the right to appropriate any property owned by the State. But failing to grant any property specifically, can it be inferred, that it was intended that property owned and already appropriated by the State to permanent and specific purposes, could be taken? This property was not specifically granted by the State to the company, but had been permanently appropriated to the use of a State institution, and was being used for that purpose. Had the property been vacant and unoccupied by the State, then it might have come within the provisions of the act. But having been permanently appropriated and employed by the State for other purposes, can it be inferred that it was the intention of the general assembly to grant this property? The construction of this act depends, like all others, upon the intention of the legislature enacting it.

The language of the act is broad enough to embrace any property of the State necessary to the construction of depots, turn-outs, engine-houses or other buildings necessary for the

completion and operation of the road; yet we apprehend, that it would hardly be contended that this grant would embrace all of the grounds and buildings connected with this institution. And yet we are unable to draw the line where the power would cease, to appropriate this property. If the company may appropriate this portion of the property why not all, because the only limit of the power would, by the construction contended for by appellant, be the necessities of the company. But if we were compelled to adopt the construction contended for, we should hold, that nothing short of an imperative, overpowering necessity, such as the failure to be able, without the use of this property, to employ and run their engines, and transport freight and passengers, must exist before property already appropriated and used by the State, could be applied to the use of the road. And no such overpowering necessity can exist, as the station and station grounds can be located at a different place, where all of the ground necessary and convenient to the road may be obtained.

The word " necessary " has great flexibility of meaning. It is used to express mere convenience, or that which is indispensable to the accomplishment of a purpose. If we were compelled to say that the general assembly intended to embrace this property in the grant, we should hold, that, as a condition to its appropriation to the use of the company, it would have to appear, that this property was indispensably necessary, not merely convenient or profitable to the road, but to its completion and operation. That, without it, the objects and purposes of the creation of the company would be defeated, and the company cease to exist. There can be but little doubt, that this strip of ground would be of great convenience to the company, and we entertain as little doubt, that all of the grounds and buildings thereon would also be of greater convenience, to say nothing of the saving of expenditures in the purchase of lands for the use of the company. But we cannot believe that it is any thing more than a matter of convenience and profit that the company should apply this ground to the purposes sought.

But as to the legislative intent in adopting this law : To rebut the presumption that this ground was intended to be granted, is the fact, that the State was using it for purposes repugnant to the object of the grant.  It is not to be presumed that the State would, by this loose and general language, destroy an institution that has been founded by the State, and fostered and supported with such care and solicitude for nearly twenty years.  And if the grant is good as to the portion of the property claimed by the road, it must be equally so as to the entire property.  And, had it been the intention of the legislature to donate this property, it may well be asked why appropriations are still being made to support it as an institution for the education of the blind, when it is liable at any time to be converted to railroad uses, and the occupants expelled.  From these appropriations, and the fact that no other provision has been made for the removal of the institution to a different place, or for their education, we must conclude that such was not their intention.

Again, the legislature gave a construction to this act, by a law adopted at the session of 1859.  By this act, the general assembly surrendered to certain named individuals, for the use of appellants, the right of the State to the track, grade, right of way, or other privileges and appurtenances, as belonged to the Springfield and Alton railroad, as lies between the road of appellants, in a township therein named, and extending through the town of Upper Alton and to the eastern limits of that city.  This enactment clearly shows, that the legislature supposed that appellant did not have the right to even appropriate a portion of the right of way owned by the State, of an old and abandoned road which the State had previously undertaken to build.  Then, if the legislature understood that appellants could not, under the grant already made, appropriate property which the State had abandoned for the purposes for which it had been acquired, how can we suppose they intended by the same grant to embrace property of such value, and which the State had in actual use and occupancy.  We are, for these reasons, of the opinion, that appellants had no power, under this enactment, to appro

priate any portion of the grounds or property belonging to the State and used for the purposes of this institution; and the judgment of the court below must be affirmed.

*Judgment affirmed.*