## OKMULGEE WINDOW GLASS CO. v. BRIGHT.

No. 7881—Opinion Filed Jan. 9, 1917.

(183 Pac. 898.)

1. **Master and Servant—Injury to Servant —Defense—Contributory Negligence.**

In an action for damages for injuries alleged to have resulted from a violation of a statutory duty imposed upon a master, the contributory negligence of the person injured may be urged as a defense thereto, unless such defense is excluded by the statute. Jones v. Oklahoma Planing Mill Company, 47 Okla. 477, 147 Pac. 999.

2. **Same—Lack of Evidence—Instructions.**

The answer here is sufficient to present the defense of contributory negligence, but in the absence of any evidence tending to sustain the

same the trial court did not err in refusing to submit that issue to the jury.

### 3. Master and Servant—Action for Injury—Sufficiency of Petition—Violation of Statutory Duty.

The petition in this case examined, and it is **held** the same is sufficient to bring the cause of action within the statute imposing certain duties upon the master, although the statute is not referred to expressly or by its terms.

### 4. Same—Defenses—Assumption of Risk.

For a violation of a statutory duty, the defense of assumed risk is not an available plea, but the same is a valid defense to a violation of a common-law duty.

### 5-7. Appeal and Error—Evidence.

5, 6, and 7, same as 1, 2, and 3 in Federal Oil & Gas Company v. Campbell, 65 Okla. 49, 183 Pac. 894, this day decided by this court.

(Syllabus by Hooker, C.)

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by Pete Bright against the Okmulgee Window Glass Company. Judgment for plaintiff, and defendant brings error. Reversed, and cause remanded for a new trial.

Sherman & Landon and Twyford & Smith for plaintiff in error.

Eaton & Cowley and McCrory & Johns, for defendant in error.

Opinion by HOOKER, C. In the petition filed in this action the defendant in error alleged that, while he was employed by plaintiff in error he was ordered to go inside of its plant and assist in the construction of a floor therein; that said floor was being constructed by the laying of steel plates on brick pillars 12 to 15 feet high and ten feet apart; that over and across said plates were placed certain other steel or iron plates, or railings, extending about 30 feet long, parallel with each other and about five feet apart; that these plates or railings were wedged, and thereupon were placed planks upon which he and the other employes were working; that the company negligently and unnecessarily caused large timbers to be placed upon this floor without any intention of using them, and as a result thereof the weight of said timbers caused the floor and jack supporting the same to give way or kick out, which caused the floor upon which plaintiff was engaged at work to fall to the ground with him some distance of 12 or 15 feet, injuring him, for which he sues to recover damages here.

The answer was a general denial, an attempted plea of contributory negligence and assumption of risk, and upon the trial below the defendant in error recovered judgment, to reverse which an appeal is had to this court.

The company asserts that it is entitled to a reversal here for the following reasons, to wit: (1) Failure of the court to submit the issue of contributory negligence to the jury; (2) failure of the court to submit the issue of assumed risk to the jury; (3) the admission of the opinion testimony of the purported expert witnesses, W. S. Moore and V. L. Hawkins, on the question of negligence; (4) the excessive verdict; (5) error of the court in giving instructions Nos. 2, 3, 5, and 6.

We will now discuss these propositions as they are presented by the plaintiff in error.

This court in the well-considered case of Jones v. Oklahoma Planing Mill & Mfg. Co., 47 Okla. 477, 147 Pac. 999, has said:

"In an action for damages for injuries alleged to have resulted from a violation of a statutory duty imposed upon a master, the contributory negligence of the person injured may be urged as a defense thereto, unless such defense is excluded by the statute."

This action is brought to recover damages alleged to have accrued by reason of the violation of section 3772, Revised Laws of 1910, and by reference to that statute we fail to find any provision of law excluding the defense of contributory negligence; hence it follows that the plea of contributory negligence is a proper defense to this action, if the same is properly pleaded and there is any evidence supporting the same. The plea of contributory negligence relied upon by the company here is as follows:

"Defendant, further answering said petition, and as a defense thereto, alleges and avers that if the plaintiff was injured as alleged in said petition the said injuries were received by him by reason of his own fault and negligence, which directly contributed thereto."

No motion was made by the plaintiff below to require the defendant company to make definite or certain, and in the absence thereof we are inclined to the opinion that the answer as pleaded was sufficient to raise the question of contributory negligence, if the evidence in the case justifies the same. Upon the examination of the petition here, we are of the opinion that the same is for damages accruing from the violation of a statutory duty, and while the statute itself, which the company is charged with having violated, is not referred to, yet the facts set forth in the petition are sufficient to bring the case

within the statute, and this court, in the case of St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083, said:

"A case which, by allegation and proof, is brought within the Employers' Liability Act of April 22, 1908, 35 Stat. 65, c. 149 (U. S. Comp. St. 1913, sections 8657-8665), is controlled by that act, although its provisions may not have been referred to in express terms in the pleadings or presented at the trial."

And the plea of contributory negligence is permissible under the statute aforesaid, but upon an examination of the record here we are unable to find any evidence which would justify the court in submitting the question of contributory negligence to the jury. While under the Constitution the defense of contributory negligence is a question of fact, always to be decided by the jury, yet, where there is no evidence relative thereto, it cannot be prejudicial error to refuse to submit that issue to the jury.

It is asserted that the court committed error in failing to submit such defense to the jury. To this we cannot agree, for the reason stated above, that there is no evidence here supporting the defendant's theory of contributory negligence.

With reference to the second proposition of the assumption of risk, this court in a number of cases has said that, for a violation of a statutory duty, assumed risk is not available to the defendant as a defense to the cause of action set forth by the injured party. See Great Western Coal & Coke Co. v. Cunningham, 43 Okla. 417, 143 Pac. 26. But for the violation of a common-law duty, the assumption of risk is a valid defense.

We do not feel disposed to disturb the verdict on account of the claim of the plaintiff in error that the damages imposed were excessive, for if the testimony of the defendant in error is to be believed and relied upon, then the jury was justified in rendering a verdict for this amount. While we conceive that the evidence as to the extent of the injury is not as accurate or as definite as in other cases, yet the estimony of the defendant in error in this case was sufficient for the jury to believe that the defendant in error was a physical wreck on account thereof, and might possibly, before life had departed, become a mental wreck. This being true, the verdict of the jury fixing his damages will not be disturbed by this court.

The objections urged by the plaintiff in error as to instructions Nos. 2 and 5 are not tenable. We have examined the instructions here, and the same seem to fairly present the law of the case to the jury

As to the other ground relied upon by the plaintiff in error for a reversal here, a more serious proposition is presented.

When the witness Moore was being examined the following proceedings were had:

"Q. Mr. Moore, I will ask you this question: Assuming that it was necessary to elevate the north end of the floor six inches, five or six inches, which was constructed of railroad irons running north and south 20 to '30 feet long over railroad irons running east and west ten or 12 feet long, which were resting directly upon pillars nine or ten feet high; and assuming that there were 2x4's so cut and placed as to be two feet apart and standing on their edge, upon edge, between the rails running north and south, upon which 2x4's were planks 1x12, placed and fastened; and assuming that there were certain arch forms, weighing from 500 to 600 pounds and from 25 to 30 feet long, resting in a position so as to cause these forms to lie and rest upon a portion of the floor which had already been completed, and which was some six inches lower than that portion that you were desirous of raising or had been raised; and assuming that these pieces of timber extended over some five or six feet and rested upon and were in contact with that portion of the floor that had been jacked up or raised; and assuming that the east rail running north and south had been raised a distance of say some five or six inches and propped, a 4x4 or 4x6 had been placed on the ground directly under this rail in such a way as to brace it up; and assuming that the west rail running north and south had been raised and certain loose bricks placed upon the pillar and in contact with it; and assuming a jack was placed on a block on the ground directly under the middle rail running north and south, upon the toe of that jack was placed a 4x4 piece of timber long enough to reach from the jack to the middle rail, in such a way as to raise the rail by means of working the jack up; and assuming that that was raised in that manner five or six inches and elevated in that manner, upon which men were to work, and placed at the north end of that section of the floor upon those pillars was a ten or 12 foot railroad iron; and assuming two men were standing upon that portion of the floor and hold of a rope which was tied to this railroad iron ten or 12 feet long—would you, from your experience and knowledge of how to do those things, would you consider that a safe place or prop which this work was being done?

"Mr. Hiatt: Defendant objects to the question as being incompetent, irrelevant, and immaterial, and for the further reason that the facts assumed in the question have not been proven to have existed in the building at the time of the accident.

"By the Court: Overruled.

"Mr. Hiatt: Defendant excepts.

"A. I won't be sure that I understand

the condition; as I understand from your statement now, there were long rails placed across other rails, and they had placed a jack under this center rail and raised it up; after them two rails had been raised there was a false floor or temporary floor there that the men was working on, and a piece of timber sitting on the jack, and eight or ten feet long, and raising the center rail—is that the idea?

"Q. Yes, sir.

"A. Was there no other props in there under this, except the jack?

"Q. Assuming that there were not any other props.

"A. I would not consider that a safe place to put men in.

"Q. Why?

"A. Well, it is entirely too hazardous a proposition, and to risk a jack, to risk nothing but a jack to hold up a thing of that kind, why in my estimation it takes somewhat the form of a deadfall. I have had quite a lot of experience in raising things of that kind, and have never hurt a man yet, but I always made sure the thing would never go down until I would take it down; I would shore up under it until I would consider it a safe place to put men."

And while the witness Hawkins was upon the stand, the following proceedings were had:

"Q. Mr. Hawkins, I show you a plat here, showing or representing a section of floor, and assuming that that represents the section of the floor that was being built—

"By the Court: To what plat are you referring?

"Mr. Eaton: Plaintiff's Exhibit A in the deposition of John W. Clark.

—and constructed for the Okmulgee Glass Plant Company, window glass company, and assuming that that section of floor is 20 to 30 feet long north and south and ten or 12 feet wide east and west, and that it consisted of railroad irons and certain pillars, brick pillars, and that these railroad irons were placed in such a position, those running east and west were resting directly upon pillars, and that upon them those running north and south were resting, and that 2x4's were so put and placed as to range about two feet apart and running east and west between the rails running north and south; and assuming that upon those 2x4's were placed planks 12 feet long, 1x12, we will say, and probably some of them 12 to 14 or 16 feet long, and that it became necessary to jack up or raise up the north end of these rails running north and south; and assuming that they had jacked up the east rail five or six inches and placed a shore prop under it consisting of a piece of timber long enough to reach from the ground to the rail,

and being a 4x4 or a 4x6; and assuming that the west rail running north and south had been raised to an elevation of five or six inches and certain loose brick had been placed upon it, upon the pillar, and assuming that a jack had been placed upon a block some four or five feet south of the north end of the middle rail running north and south, in such a position as to rest directly upon a block on the ground, and that a piece of timber 4x4 or 4x6 was placed upon the toe of this jack and extended up and was in contact with the middle rail, and that this jack had been worked and used, worked up so as to raise or elevate this rail five or six inches and left in that position, and assuming that men were placed on a portion of this floor at a point near where this jack was or near the north end of it, and were engaged at the time in holding a rope tied around a rail ten or 12 feet long, which was at the time being placed under the north end of these rails running north and south of these pillars and assuming that certain pieces of timber or arch forms 25 to 30 feet long, and weighing from 500 to 600 pounds, had been placed in such a position so that a portion of these timbers would rest upon the west part of the floor, rest upon that part of the floor which was directly west of this floor, and to extend over and in contact with a portion of this floor that was so raised as I have described to you and propped; and assuming that the west part of the floor was some six or eight inches lower than that portion under which these props were so placed as I have described to you; and assuming that these pieces of timber extended over five or six feet on that portion of the floor and were there at the time the middle rail was being jacked up as I have described to you—I will ask you if, in your opinion, the manner of elevating this jack under this piece of timber and the piece of timber as a prop or means of support for holding up the rail was safe or reasonably safe?

"Mr. Hiatt: To which question the defendant objects for the reason that it is incompetent, irrelevant, and immaterial, and for the further reason that plaintiff has not shown by the evidence that the conditions and facts assumed in the question actually existed at the place or time of the accident.

"By the Court: Overruled.

"Mr. Eaton: Defendant excepts.

"A. I don't believe I could answer without asking a question.

"Q. All right.

"A. You say this was a 4x4 sitting on the toe of the ratchet jack I presume?

"Q. Yes, sir.

"A. And then raised four or five inches after the 4x4 was set under this rail and then the ratchet jack raised five or six inches and not shored under?

"Q. Yes, sir; assuming that there was no other props but this, and left in that condition.

"A. No; I would not consider it safe."

It is asserted here that the effect of these questions was to cause the witness to pass upon the ultimate facts in this case, thereby invading the province of the jury.

Opinion evidence, as a rule, should not be given to the jury, but the witness should be required to state the facts, and before a witness can be authorized to give an opinion an exception to the general rule must be made. The evidence here discloses that the injury alleged to have been received by the defendant in error was said to have occurred in the following way:

"The accident occurred in the afternoon, inside the building. I had received instructions from the superintendent to lower a part of the floor. The section, however, we were working on at the time was not to be lowered; it was all completed but one length of rail about 12 feet long, which lay on top of brick piers to support rails which lay the other way and were about 20 feet long. Mr. Bright was out on this section of floor when the supports gave way, and he fell in the basement. Mr. Bright was pulling up this rail with a rope. I was on the brick pier to land the end of the rail, and there were a couple of men to land the other end on the other pier, but all at once the floor gave way, and Mr. Bright fell in the basement. * * * We were finishing the last section at the time of the accident. * * * The fall was caused by a weight, too much weight. * * * I mean more than the supports under it would bear up. * * * We had raised the rails with jacks; they were placed under one end of the rail for the purpose of raising the rail up to remove it for the purpose of raising (substituting) another. We had raised the floor to sufficient height to allow the removal of the rail. We taken a 4x4 timber sufficient length to reach the jack sitting on the block and the rail (railroad rail) to be raised, then we worked the jack and raised the rail. The pillars were eight or nine feet high, constructed of brick, about ten feet apart, square each way. Upon these brick pillars rested certain rails. The rails directly on these pillars ran east and west. On the rails running east and west were the rails north and south. The rails running east and west were 30 feet; those running north and south were 20 feet. Three rails ran east and west on these two sections, and three north and south. They were secondhand railroad tracks. The middle rails running north and south were supported by rails running east and west. There were 2x4's between the long rails running north and south, placed about two feet apart. They were cut in to fit the rail, and stood on edge. This was covered by 1x2 planking. The 2x4's between the long rails running north

and south were placed there to support this planking to spread concrete on top of, and also held the rails in position. We raised this section of the floor which fell to remove a long rail, and put in a short one. We had only raised the north end. At the time we raised the north end the cross-pieces were resting upon the pillars. We had placed a jack and a piece of timber about three or four feet from the end of the center rail. The jack and timber were located in such a way as to be perpendicular. There were no other braces, props, or supports under the center rail at the time the floor fell. The west rail had been raised up, and some brick had been put under the north end of it. The east rail running north and south at the time of the accident had a 4x4 timber setting under it. The center rail running north and south at the north end fell, the rail under which the jack and piece of timber were placed. At the time the floor fell Mr. Bright was standing on the east side near the north end. The floor fell something like eight or nine feet. The north end of center rail landed on the ground, and laid up over the center rail under the brick piers. In other words, the north end went down and the south end went up."

Now, the question to be determined here is: Did the court commit an error when these witnesses were permitted to give their opinion as to whether the place was safe?

The views this day expressed in the case of Federal Oil Co. v. D. C. Campbell, 65 Oklahoma, 183 Pac. 894, will present our views upon the admission of this testimony. We think this evidence was prejudicial to the rights of the plaintiff in error, and under the record here should operate as a reversal of this cause.

The judgment of the lower court is therefore reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.