**MID-CO PETROLEUM CO. v. ALLEN et al.**

No. 12141—Opinion Filed March 10, 1925.

Rehearing Denied May 12, 1925.

**1. Death—Action for Wrongful Death of Child of Widow—Parties Plaintiff—"Next of Kin".**

Where a deceased child leaves no issue, nor husband, nor wife, but leaves a mother, she is the only heir and "next of kin" of the deceased, and the brothers and sisters of said deceased should not be joined with his mother in an action for damages for the killing of a deceased child.

**2. Same.**

By the term "next of kin" is meant all who would have been entitled to share in the distribution of the personal property of the deceased.

**3. Same—Evidence—Proof of Mother's Expectancy by Mortality Tables.**

In the trial of an action wherein a surviving mother is seeking to recover damages for the wrongful death of her son, it is error to admit in evidence mortality tables to prove the expectancy of the surviving mother.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Noble County; Arthur R. Swank, Judge.

Action by Ella Allen, G. A. Allen, Aletha Brady. W. M. Allen, Rosa Fenter, Fanny Allen, Minnie Denis, and Bessie Allen, by her next friend. Ella Allen, against Mid-Co Petroleum Company, a corporation. There was judgment for the plaintiffs, and defendant appeals. Reversed.

This is an action by the plaintiffs against the defendant for damages for the alleged wrongful death of Henry Allen, a son of Ella Allen, and a brother to the other plaintiffs. It is alleged in the petition that Henry Allen was in the employ of the defendant, and that on July 12, 1918, the said Henry Allen fell from a scaffold upon which he was working on an oil tank and struck his head on some hard instrument that broke his skull and caused his death; it is alleged that the defendant was negligent in not providing a safe place for said Henry Allen to work, and that by reason of the negligence of defendant, he fell from said scaffold and was killed. They set up the relationship of the plaintiffs to said Henry Allen and pray for judgment in the sum of $20,000. The defendant filed a motion to quash the summons in said cause, which motion was overruled by the court, and defendant then filed answer prefacing said paragraph of its answer with the words: "Without waiving any of its other defenses," etc.

On the trial, it is shown that Ella Allen was the mother of Henry Allen and that the other plaintiffs are brothers and sisters of said Henry Allen; that Henry Allen had no wife, no children, and no father living; that Henry Allen was a rivet heater and was "bucking up" a tank for the tank builder, Fred Joyce, and that "the bar slipped off the scaffold on which Allen was working, and when the bar "slipped

off" he went backward and fell about 12 feet; the "dolly bar" held by Allen was about 28 inches long and weighed about 40 pounds. He also held a lever; and that Allen was a competent and experienced man. There are numerous objections to the testimony offered by plaintiff, most of which were overruled and exceptions allowed. There were also exceptions saved to the refusal to give certain instructions and to the giving of certain instructions, which are assigned as error by the plaintiff in error, defendant below. The trial resulted in a verdict for the plaintiffs and defendant filed its motion for a new trial, alleging various and sundry errors on the part of the trial court, which said motion was overruled and exceptions saved by the defendant. The plaintiff in error has filed eight propositions of error on the part of the trial court, and we will take them up in their order.

Twyford & Smith and W. R. Withington, for plaintiff in error.

Wright, Blinn & Gilmer, for defendants in error.

Opinion by MAXEY, C. The first proposition argued by the plaintiff in error is stated thus: "Defendant's motion to quash the summons and service thereof should have been sustained." In our judgment the summons is regular on its face under the rules of this court. The complaint is that the copy of the summons served did not fix the answer date, but the date was left blank. The fourth ground of the motion to quash was that the statute authorizing the service was unconstitutional and void. We think this was asking for affirmative relief and constituted a general appearance. We think the motion to quash was properly overruled. The proper method for attacking the service was by motion to set aside the service and not by motion to quash the summons of service.

The second proposition is stated thus: "The trial court erred in allowing and permitting the brothers and sisters to be parties plaintiff and in permitting a recovery for them."

The petition alleged and the proof showed that decedent left no wife, children, or father, but left a mother and brothers and sisters. All of the brothers and sisters joined with the mother as plaintiffs. Evidence touching the children and their station in life was objected to by the defendant and exceptions saved. The point emphasized by plaintiff in error on this proposition is that it was prejudicial error to permit any evidence to be introduced on behalf of any plaintiff except Ella Allen, the mother, or to permit a recovery on behalf of the other plaintiffs. The statutes under which this action is brought are sections 824 and 825, Comp. Stat. 1921, as follows:

Section 824: "Action for death by wrongful act. When the death of one is caused by the wrongful act or omission of another the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Section 825: "Same—who may sue. In all cases where the residence of the party whose death has been caused as set forth in the preceding section is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

Without these statutes, there would be no right of action for death, as there is none at common law. No administrator was appointed and therefore section 825 applies. Since there is no widow or children, the action could have been brought by the next of kin only, which in this case is the mother alone, there being no father. Under our law of succession, the personal property must descend as follows: "If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares." Sec. 11301, subd. 2 Comp. St. 1921.

This court has already decided that the term "next of kin," as used in the above sections of the statutes, is synonymous with legal heir under the laws of descent and distribution. The case of Shawnee Gas & Electric Co. v. Motesenbocker, 41 Okla. 454, 138 Pac. 790, lays down the following rule in the second and third paragraphs of the syllabus:

"Where no personal representative is appointed, and the deceased left no widow all the next of kin must join in the action.

"By the term 'next of kin' is meant all who would have been entitled to share in the distribution of the personal property of the deceased."

It will be observed that at the time the above action was brought the mother would

take one-half and the brothers and sisters one-half. If these statutes had been in force when Mr. Allen died, this action would have been correctly brought. However, they were afterwards repealed, and the present law as contained in section 11301, Comp. Stat. 1921, of the statute of descent and distribution was, and is now, in force and effect. In the case of Kali-Inla Coal Co. v. Ghinelli et al., 55 Okla. 289, 155 Pac. 606, the court said, quoting from the syllabus:

"Where a deceased child leaves no issue, nor husband, nor wife, but leaves both father and mother, they are the only heirs, and 'next of kin' of the deceased, and the brothers and sisters of said deceased should not be joined with his father and mother in an action for damages for the killing of the deceased child."

Shawnee Gas & Electric Co. et al. v. Motesenbocker, 41 Okla. 454, 138 Pac. 790, is to the same effect, and the case of Whitehead Coal Mining Co. v. Pinkston, 71 Okla. 124, 175 Pac. 364, holds the same.

There is no question but what the children were improperly joined as parties plaintiff with the mother in this case, but the difficulty we have in correcting that error is that counsel for defendant did not raise the question or present that identical question to the court until after the appeal in this case. If counsel had filed the proper pleading to raise the question of misjoinder, the trial court in all probabilities would have required plaintiffs to have struck out all names of the parties plaintiff except Ella Allen, the mother. There can be no doubt but what including the children as parties plaintiff was prejudicial to the defendant, and the testimony admitted showing the age and condition of the children was improper and prejudicial, especially as to the child, Bessie Allen, who, it appears, had measles when she was about three years old which left her paralyzed, and she is still a paralytic unable to walk or help herself in any way. There is no lack of testimony in the record that shows that the testimony with reference to the children was very prejudicial, but counsel not having raised the objection in any way to their being made parties to the case, we hardly feel justified in reversing the case on that ground.

Proposition three is stated thus: "The trial court erred in permitting mortality tables to be introduced showing the age of plaintiff, the mother of decedent." This testimony was objected to at the trial and the mortality table was included in that part of it that showed the expectancy of the mother, a person 53 years old, to be 18 79/100 years. This identical question was before this court in the case of M., O. & G. Ry. Co. v. Lee, 73 Okla. 165, 175 Pac. 367, where the court, quoting from the syllabus, said:

"In the trial of an action wherein a surviving widow is seeking to recover damages for the wrongful death of her husband, it is error to admit in evidence mortality tables to prove the expectancy of the surviving widow."

And in the opinion, the court said:

"At the trial of this cause the plaintiff introduced in evidence mortality tables for the purpose of showing her expectancy. Objection was made to the introduction of this evidence for the reason that it was incompetent, irrelevant, and immaterial. Over the objection of the defendants this evidence was permitted to go to the jury to be by it considered. There is no contention but that mortality tables may be used in evidence for the purpose of establishing the expectancy of the deceased, and to enable the jury to have some criterion by which to determine the probable length of the decedent's life. It, however, is not permissible to introduce mortality tables for the purpose of showing the expectancy of the surviving widow's life, for the reason that the amount of her recovery does not depend upon the probable duration of her life; regardless of what her expectancy might be, or what her age is, she is entitled to recover whatever loss she has sustained by reason of the wrongful death of her husband. This question does not seem to have been presented in any case that has been before this court. The Supreme Court of Pennsylvania has passed on this question in the case of Emery v. Philadelphia, 208 Pa. 492, 57 Atl. 997, and the court said:

"'Appellant's assignment of error, however, is not founded on the simple admission of the Carlisle Tables, but on their admission as evidence of the expectation of life of plaintiff's husband, without accompanying proof of plaintiff's own age and expectation. It is urged that while the husband might have lived a certain number of years, yet the wife might not, and therefore her damages ought to be limited by the double contingency of their joint lives. The point is new, and the fact that it has not been raised before in any of the very numerous cases where it would have been appropriate, if sound, would seem to indicate that it has not appeared tenable to the professional mind. We are of this opinion. The life of the husband having been terminated by the accident, its probable duration, in the regular course of nature, must, as already said, be approximated by the best evidence attainable, even though that leads only to conjecture. But the widow, plaintiff, is living, and is entitled now to compensation for what she had lost

by her husband's death. To complicate the question by another conjecture as to her expectation of survivorship would add further uncertainty to the result without being so clearly demanded by reason or justice as to be imperative or even advisable.'"

And in this case, the court said:

"We think the foregoing rule is sound and applicable to the case at bar. The amount that the plaintiff is entitled to recover in this case does not depend upon her age, and for that reason any evidence pertaining to her age was incompetent and should not have been admitted. If it is admissible to introduce mortality tables to prove the probable expectancy of the surviving widow, then it would logically follow that a woman 25 years of age would be entitled to recover a much larger sum that a surviving widow of 75 years of age. We know of no such distinction having been made by the courts of this state, and do not believe that any such was intended under the law which gives the right of action to the surviving widow."

See, also, the case of Swift & Co. v. Johnson, 138 Fed. 867, 71 C. C. A. 619, 1 L. R. A. (N. S.) 1165.

In the case we are considering, the court instructed the jury that it could take into consideration not only the life expectancy of the mother, but also that of the brothers and sisters, thus committing a double error to the prejudice of the defendant.

Proposition four is stated thus:

"The trial court erred in permitting the introduction of opinion evidence touching 'the safety' of place to work, and invading the province of the jury."

The only negligence alleged in the petition is as follows:

"While working on an oil tank scaffold about ten feet from the ground, holding rivets in such oil tank, fell and struck his skull, causing his death, all on account of said defendant not furnishing him a safe place to work. said scaffold being defectively, and not properly, built, the same being too narrow to give him sufficient space to work in safety; that such scaffold should have been much wider and sufficiently wide to have been a safe place to work; and wide enough to catch and hold the bar which slipped, but the same was not, and when the said bar slipped it fell to the ground, throwing the said Henry Allen to the ground as aforesaid: that said Henry Allen was furnished said place to work as a safe place and he believed the place was a safe one to work, but in fact the same was not a safe place, as herein set forth, and he was working in a careful manner when said accident occurred and was killed because of the negligence of the said defendant as aforesaid."

The answer of the defendant put in issue the question of whether the defendant used reasonable care with respect to furnishing the deceased a safe place in which to work. These pleadings made an issue of fact to be determined by the jury on competent evidence. The witnesses Fred Joyce and Shannahan testified as experts. In our judgment, this was not a proper subject for expert evidence. The question at issue was whether or not the defendant used reasonable care to furnish deceased a safe place to work. The witnesses, just mentioned, over the repeated objection and exceptions of defendant, were permitted to decide the question for the jury. The witness Joyce testified as follows:

"Q. Then the dolly bar is used there for the purpose of driving rivets? A. Yes, sir. Q. And what is the lever used there for? A. To hold the dolly bar solid. Q. Now you say Allen had one hand on the dolly bar? A. Yes, sir. Q. And the other on the lever? A. Yes, sir. Q. Where was he? A. He was sitting on the lever. Q. You say Allen fell while holding this in this position? A. Yes, sir. Q. How came him to fall? A. He slipped off this lever. Q. Was there any way to prevent that bar from slipping that you know of?

"The defendant objects to that as calling for a conclusion of the witness and opinion of the witness and as incompetent, irrelevant, and immaterial.

"By the Court: Overruled, exception allowed.

"A. Not that I know of. Q. Was there any way to have prevented him from falling? A. I do not understand how there could have been. If I could have seen any I would not have let him fall. Q. Could that platform have been built in any way that he would have been prevented from falling?"

"By Mr. Twyford: Objected to as incompetent, irrelevant and immaterial and calling for a conclusion of the witness.

"By the Court: I think that is a proper question. It is merely an opinion of this man who is an expert along this line. The average man who is not familiar with scaffolds of that kind of work for the construction of steel tanks don't know what was a safe scaffold and this man who had been engaged in that work for a number of years would know more about it than an unskilled man. The objection is overruled. (Exception allowed.)

"A. Yes, sir, it could have been prevented. Q. Now in what way could it have been built to have prevented him from falling?

"By Mr. Twyford: ( Objected to as calling for a conclusion of the witness, incompetent, irrelevant and immaterial.

"By the Court: Overruled, exception allowed.

"A. Well, it could have been built wider and it could have had a banister around there. Q. · It did not have any banister? A. No, sir. Q. State whether or not in doing this kind of work that this bar slips?"

"By Mr. Twyford: Obje·ted to as calling for a conclusion and opinion of the witness and incompetent, irrelevant and immaterial.

"By the Court: Overruled, exception allowed.

"A. It could have been built that way. There was no reason why it could not have been, that I can see."

"By Mr. Twyford: Move to strike out; the answer of the witness is an opinion and conclusion of the witness, and incompetent, irrelevant and immaterial and not responsive to the question.

"By the Court: Overruled, exception allowed.

"Q. The only reason is it just costs a little bit more money?"

"By Mr. Twyford: Objected to as calling for a conclusion and opinion of the witness and is incompetent, irrelevant and immaterial.

"By the Court: Overruled, exception allowed.

"A. Yes, sir. Q. If that scaffold should have been 42 inches wide and a banister, as you said, around it, could Mr. Allen fallen off and hurt himself?

"By Mr. Twyford: Objected to as calling for a conclusion of the witness and incompetent, irrelevant and immaterial.

"By the Court: Sustained. exception allowed. (A. I do not think so.) Q. You have observed Mr. Allen in doing work. State whether or not he was a careful painstaking workman."

"By Mr. Twyford: Objected to as incompetent, irrelevant and immaterial.

"By the Court: Overruled, exception allowed.

"A. Yes, sir."

In the case of Federal Oil & Gas Company v. Campbell, 65 Okla. 49, 183 Pac. 894, the court said:

"It appears from an examination of the record that the court permitted witnesses for the defendant in error over the objection of the plaintiff in error, to testify to opinions as to the ultimate facts in this case, which were the facts which the jury were required to find, to wit: (1) The safety of the place: (2) The safety of the instrumentalities with which to perform the work; (3) The competency of the fellow servant, Snell, to perform the work assigned to him. And it is contended by the plaintiff in error that on account of this the province of the jury was invaded and that the same constitutes prejudicial error here. This question is by no means a new one in this jurisdiction."

The court, in the early case of Bilby v. Thomas, 33 Okla. 256, 124 Pac. 1094, said:

"On the examination of witness, Hutchinson. who it appears was the salesman who had sold this machinery to the defendant, and whose testimony was o. undoubted consequence and weight because of his familiarity with the same, he was asked and permitted to answer in the affirmative, over the objection and exception of counsel for defendant, this question: 'I will ask you to state whether or not the machinery. that you sold Mr. Bilby was exactly as represented in the contract which he signed.'

"It is to be noticed that this was the specific, identical question which was presented to the court by the pleadings for the determination of the jury. It does not call for any fact, but calls for a conclusion made up of a large number of facts, and it is not couched in language which will permit the witness to give his testimony, but presents in the language of the attorney the ultimate fact at issue, and requires a simple assent. Thereafter he was asked this question: 'Mr. Hutchinson. now I will ask you that, with proper management, now this warranty that Mr. Bilby signed at the time you sold him this machinery, that with proper management they are capable of doing good work and in ginning rough and dirty cotton will make a cleaner sample than any other gin now on the market, running under the same conditions, will they do that?'

"To this question there was the objection that it was leading and called for a conclusion of the witness. The same was overruled, and the witness again answered, 'Yes'. The witness was thereafter asked, referring to the warranty: 'It says that the materials used in their construction are guaranteed to be of the best stock obtainable and the workmanship A No. 1, is that true?'

"The objection made thereto was that it was leading and called for a conclusion. This likewise was by the court overruled, and the witness answered. 'It is'. The ruling on all of these questions was excepted to, and in this court is assigned as error. The purpose of interrogating witnesses concerning issues in a case is to give information to the jury to the end that a conclusion may be reached in accordance with the facts. Witnesses and evidence are offered for the purpose of establishing facts, and it is for the jury, and not the witnesses or the counsel who interrogate them, to draw conclusions. Encompassed within the questions and answers asked and secured from this witness was the ultimate fact to be

found by the jury of whether the machinery was exactly as represented in the contract, and whether with proper management it was capable of doing good work and making a cleaner sample than any other gin on the market, and whether it was constructed of the best stock obtainable and workmanship thereon A No. 1. If the jury accepted the testimony of this witness—and it had an absolute right to do so, notwithstanding any evidence which may have conflicted with it—there was no room for controversy as to who should recover in the case, for, by securing from the witness his assent to these bald bare conclusions which covered the entire issue in the case, there was left no room for deliberation and consideration of the evidence of defendant wherein he sought to show that the machinery had failed to meet the demands of the warranty. To two of these questions complained of counsel for plaintiff offer no argument of extenuation in their brief, and in our judgment they are plainly erroneous, and prejudicially so."

Other authorities supporting the same general rule as announced in the case, above cited, are as follows: Hicks v. Davis, 32 Okla. 195 120 Pac. 260; 8 Ency. Plead. & Prac. 78, 79 and cases under note 1; Hall v. Goodson, 32 Ala. 277; Walker v. Walker's Ex'r, 34 Ala. 469; Conner v. Stanley, Adm'r, 67 Cal. 315, 7 Pac. 723; Crawford v. Birkins, 16 Colo. App. 532, 66 Pac. 687; Old et al. v. Keener et al., 22 Colo. 6, 43 Pac. 127; Denver & Rio Grande R. Co. v. Vitello, 34 Colo. 50, 81 Pac. 766; St. Louis, J. & C. R. Co. v. Trustees, etc., 43 Ill. 303; Campbell v. Russell, 139 Mass. 278 1 N. E. 345; Wiggins v. St. Louis, I. M. & S. Ry. Co., 119 Mo. App. 492, 95 S. W. 311; National Bank of Chelsea v. Isham, 48 Vt. 590.

Okmulgee Window Glass Co. v. Bright, 65 Okla. 53, 183 Pac. 898, is a case that was also reversed on the admission of expert evidence on the manner of elevating the floor of a building under construction. In this case it was claimed that defendant did not furnish a safe place in which to work. Both of these witnesses were permitted to testify at length in regard to the construction and maintenance of scaffolds, but we have quoted enough of the testimony to show its application to the question at issue. We are clearly of the opinion that most of this testimony was erroneous and should not have been admitted.

. Proposition five is stated thus: "The court erred in refusing offered instructions on the part of defendant, on the law of the case, on matters not covered in the general charge." We are of the opinion that some of these instructions should have been given as they clearly state the law and are not covered by other instructions in the general charge of the court, but as we are reversing the case on other grounds, it will not be necessary to notice them further.

Proposition six goes to the overruling of the motion for a new trial. In view of what we have already said, this proposition is well taken and should have been sustained.

Proposition seven goes to the trial court's instructions Nos. 4, 5, 8, 9, and 13. Instruction No. 4 quotes a part of section 7269, Comp. Stat. 1921, and instruction No. 5 charges the jury that this statute is mandatory, and that if they believe that deceased fell or was thrown from the scaffold surrounding the tank being built and as a result died, and if they further believe that the scaffold on which Henry Allen was working was defective and not built in such a manner as to adequately protect the said Allen while so employed, in the manner provided by the statutes of the state of Oklahoma, and the failure on the part of the defendant to so erect said scaffold on which deceased was required to work, plaintiffs should be entitled to recover, etc. We are inclined to think that this instruction does not contain the statutory requirement. The statute provides that:

"The scaffold shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection of life and limb."

The instruction above referred to in our judgment does not comply with the provisions of the statute and is misleading. These instructions are not followed by a proper instruction defining the duty of the master in respect to using reasonable care to furnish a reasonably safe place in which to work.

It is not the duty of the master to furnish a safe place in which the servant works. It is only his duty to exercise reasonable care in respect thereto. This is not an absolute duty to furnish a safe place, but it is a duty to use reasonable care in that regard. Clinton & O. W. Ry. Co. v. Dunlap, 75 Okla. 64, 179 Pac. 749.

We think the case should be reversed and remanded to the trial court, to grant a new trial and proceed in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 17 C. J. p.1218; (2) 17 C. J. p. 1271; 29 Cyc, p. 1046; (3) 17 C. J. p. 1356.