**MISSOURI, O. & G. RY. CO. et al. v. LEE.**

No. 9267—Opinion Filed Oct. 1, 1918.

(175 Pac. 367.)

**1. Death—Wrongful Death—Petition—Items of Damage.**

In an action by a surviving widow for damages sustained for the wrongful death of her husband, allegations in the petition that plaintiff has suffered great mental anguish by reason of his death, and for loss of his society, comfort, association, love, and protection, should, upon proper motion, be stricken, as they are not proper items of damage on which to base a recovery.

**2. Same — Evidence — Widow's Expectancy or Mortality Tables.**

In the trial of an action wherein a surviving widow is seeking to recover damages for the wrongful death of her husband, it is error to admit in evidence mortality tables to prove the expectancy of the surviving widow.

**3. Same — Instructions — Grounds of Recovery.**

In an action by a widow to recover damages for the wrongful death of her husband, an instruction which directs the jury to take into consideration the means of the plaintiff in arriving at their verdict is erroneous for the reason that her right to recovery is

based upon her pecuniary loss and does not depend on her financial condition.

**4. Railroads — Wrongful Death — Last Clear Chance.**

Evidence examined in this case, and held not to warrant the giving of an instruction on the last clear chance.

(Syllabus by Davis, C.)

Error from District Court Wagoner County; Chas. G. Watts, Judge.

Action by Fannie Lee against the Missouri, Oklahoma & Gulf Railway Company and Alexander New and another, its receivers. Judgment for plaintiff, motion for new trial denied, and defendants bring error. Reversed and remanded for new trial.

Edward R. Jones, Ephraim H. Foster, and Arthur Miller, for plaintiffs in error.

Watts & Summers, for defendant in error.

Opinion by DAVIS, C. The parties to this action will be referred to as they appeared in the district court of Wagoner county, Okla.; that is, Fannie Lee as plaintiff, and Missouri, Oklahoma & Gulf Railway Company and Alexander New and H. C. Ferris, receivers, as defendants.

This is an action instituted by Fannie Lee, as the surviving widow of Taylor Lee, deceased, to recover damages alleged to be due by reason of Taylor Lee having received injuries by being run over by a passenger train on the defendant's track, from which he shortly thereafter died. The petition sets forth that Fannie Lee and Taylor Lee were husband and wife, and that Taylor Lee was a man about 44 years of age, and was living at the time of his death in the city of Wagoner, Okla.; that the defendant is a corporation owning a line of railway running through the city of Wagoner, Okla.; and that the defendants Alexander New and H. C. Ferris are the duly appointed, qualified, and acting receivers for said corporation, and as such receivers were in charge of and operating said road on the 21st day of February, 1916; that on the 21st day of February, 1916, Taylor Lee was going to the depot of the M., K. & T. Railway Company, and was crossing the track in Wagoner, Okla., of defendant, at the intersection of Cherokee street and defendant's road, and was run over and received injuries from which he thereafter died; that the proximate cause of the death of Taylor Lee was due to the negligence of the receivers in permitting a mechanical bell or signal to become out of working order, and by reason thereof that said bell was not working at the time that Taylor Lee attempted to cross the track, and

that the agents, servants, and employes of the receivers were further negligent in permitting said train to become about two hours late, and that the agents, servants, and employes failed to ring the bell or blow the whistle of said engine or give warning, as required by law, of the approach of said engine and train of cars to said crossing; that by reason of the death of Taylor Lee this plaintiff has been damaged in the sum of $15,000; for all of which she prayed judgment against the defendants.

Alexander New and H. C. Ferris, as receivers of said corporation, filed an answer which consists of a general denial, and also pleaded contributory negligence on the part of said Taylor Lee, in that he neglected to use ordinary care when he went on said right of way. There was no service procured on the M., O. & G. Railway Company, and therefore no issue is presented as to said defendant. The evidence in this case shows that the track of the M., O. & G. Railway Company runs north and south through the town of Wagoner, and that the track of the M., K. & T. Railway Company runs north and south parallel to the track of defendant, a short distance west; that Cherokee street runs east and west through said town, and crosses the right of way of the defendant where this accident occurred. The depot of the M., K. & T. Railway Company is located just west and south of the intersection of the track of defendant and Cherokee street. On the night that the deceased met his death, he was going to the depot of the M., K. & T. Railway Company for the purpose of assisting some of his relatives, who were intending to leave on the south-bound M., K. & T. Railroad. The M., K. & T. passenger train was due at Wagoner, Okla., about 8 or 8:30 o'clock that night. The south-bound passenger train of the defendant was due to arrive about 6 o'clock, but for some reason was about two hours late. Deceased, in going to the depot, was traveling along the south side of Cherokee street on the sidewalk, the sidewalk extending almost to the track of defendant's railroad. At the intersection of Cherokee street and defendant's railroad there had been established by defendant an electric bell for the purpose of giving warning of the approach of trains to those who desired to cross said track, and there was also established at that place an electric light.

The evidence discloses on the part of the witnesses for the plaintiff that about half a mile north of the place where the deceased met his death the passenger train of defendant blew its whistle and the headlight could be seen as the train approached. There

were a number of witnesses who testified in this action, who were standing at the depot of the M. K. & T. Railway Company and watched the incoming train on the defendant's track. All of the witnesses testified, both for the plaintiff and defendants, that there was a whistle sounded, and most of them placed the distance north of the crossing at which it was sounded at about one-half mile; some placed it a little further and some nearer. There were only two eye witnesses to the accident, one being W. H. McClain, fireman, for the defendants, and the other being A. C. Carter, a witness for the plaintiff. From the evidence of the witnesses who saw the accident it seems that the defendant was walking west, and when he reached the railroad crossing did not stop, but continued until he reached the track, at which place he was struck by the engine and killed. The cause was submitted to a jury and a verdict for $5,000 damages was returned. A motion for new trial was filed and overruled, and from the action of the court in overruling this motion the defendants prosecute an appeal to this court.

There are numerous assignments of error, but we do not deem it necessary to set out in detail each assignment so made. There was a motion filed by the defendants to strike certain allegations from the petition of the plaintiff. That part of the petition against which the motion is leveled is as follows:

"She states that the said Taylor Lee, deceased, was 44 years of age at the time of his death as aforesaid; that he was a strong, vigorous, active, and healthy man, and would have lived and had a reasonable expectancy of many years; that as his wife she was entitled to the association, protection, society, comfort, love, and affection of her husband, all of which she was deprived of, by said wrongful and negligent acts of said defendants aforesaid, and was caused and suffered great mental anguish by reason of said death and said deprivation."

This motion was duly considered by the court and overruled, to which action of the court the defendants excepted.

We are of the opinion that the court was in error in overruling the motion to strike that part of the petition complained of by the defendants and particularly that part which alleges that plaintiff was caused and suffered great mental anguish by reason of his death, and for the loss of his society, comfort, association, love, protection, and affection. It is a well-settled principle of law in this jurisdiction that a recovery can be had by the surviving widow only for the pecuniary loss that she suffered by reason of

the death of her husband. This being true, the foregoing allegations constitute not only surplusage, but are calculated to be highly prejudicial to the rights of the defendants.

This action was instituted under and by virtue of section 5281, R. L. 1910. Under this act the only recovery that could be had was for the pecuniary loss sustained by plaintiff by reason of the death of her husband. In the case of Smith et al. v. C., R. I. & P. Ry. Co., 42 Okla. 577,142 Pac. 398, Commissioner Harrison states the measure of damages applicable to cases arising under this act as follows:

"As to the third ground, the ground upon which plaintiff sought damages for the mental anguish and suffering of deceased. while the facts in relation thereto might have been sufficient to have led reasonable men to differ, and therefore should have been submitted to the jury, yet, inasmuch as plaintiff was suing under section 5281, Rev. Laws 1910, which provides that the damages recovered must inure to the exclusive benefit of the widow and children, and inasmuch as recovery for his injuries, mental anguish, and suffering is a cause for which he could have recovered had he lived, and inasmuch as whatever he might have recovered on such ground belonged to his estate and not exclusively to the widow and children, she could not recover for mental anguish in the capacity in which she brought this suit, but should have brought a separate action on that ground. Hence whatever error may have been committed by the court in this regard was harmless."

That a widow, suing for damages resulting from the wrongful death of her husband, is confined to the pecuniary loss sustained thereby, and is not permitted to recover for mental anguish and suffering, or loss of his society, occasioned by his death, is sustained by the great weight of authority.

Tiffany, in his work on Death by Wrongful Act, states the measure of damages that should be applied in actions arising under statutes that have been modeled upon Lord Campbell's Act, as follows:

"In Blake v. Midland Railroad Company, which is perhaps the leading case upon the measure of damage, Coleridge, J., said: 'The title of this act may be some guide to its meaning, and it is "An act for compensating the family of persons killed," not for solacing their wounded feelings;' and in that case it was held that in assessing damages the jury could not take into consideration the mental suffering of the plaintiff for the loss of her husband, and that if the damages exceeded any loss sustained by her, admitting of a pecuniary estimate they must be deemed excessive. As has been stated, the New York act, and some others which

have been modeled upon it, require the damages to be assessed with reference to the pecuniary injuries. But irrespective of the use of the pecuniary estimate in the various enactments, the construction adopted in Blake v. Midland Ry. Co., has been almost universally followed, and it is held that the jury are confined to the pecuniary loss, and that nothing can be allowed by way of solatium for the grief and wounded feeling of the beneficiaries, or to compensate them for the mere loss of society or of companionship which they suffered." Paragraph 154, p. 324.

The rule announced supra as to the measure of damages applicable to cases like the one at bar finds support in practically every state where the question has been adjudicated. Among some of the cases cited by the author in support of the text are the following: Ill. Central R. Co. v. Barron, 5 Wall. 95, 18 L. Ed. 591; Little Rock & F. S. Ry. Co. v. Barker, 33 Ark. 350, 34 Am. Rep. 44; City of Chicago v. Major, 18 Ill. 349, 68 Am. Dec. 558; Hutchins v. St. P., M. & M. Ry., 44 Minn. 5, 46 N. W. 79; Webb v. D R. G. Ry. Co., 7 Utah, 17, 24 Pac. 616.

The rule stated in Cyc. with reference to the proper measure of damage to be applied in an action by a widow for the loss of her husband is as follows:

"By the great weight of authorities in an action by parents for the wrongful death of their child, by a husband or wife for the death of his or her spouse, or next of kin for the wrongful death of the decedent, damages cannot be recovered for the loss of the society of the deceased." 13 Cyc. 371.

The same authority, speaking of the right of a beneficiary to recover for mental suffering, states the following rule:

"The jury is not authorized to take into consideration the mental suffering of the beneficiaries designated by the statute and award solatium for the bereavement and grief occasioned by the death, but must give compensation for pecuniary loss only, such injury to the sentiments or affections which have been frequently denominated sentimental damages not being susceptible of pecuniary measurement." 13 Cyc. 373.

Among the authorities cited in support of the text are the following: Ala. Great S. R. R. Co. v. Burgess, 116 Ala. 509, 22 South. 913; Munro v. Pac. Coast Dredging Co., 84 Cal. 515, 24 Pac. 303, 18 Am. St. Rep. 248; C. R. R. Co. v. Rains, 203 Ill. 417, 67 N. E. 840; L. & R. R. Co. v. Graham's Adm'r, 98 Ky. 688, 34 S. W. 229; Barth v. Kansas City El. Ry. Co., 142 Mo. 535, 44 S. W. 778; Railroad Co. v. Wyrick, 99 Tenn. 500, 42 S. W. 434.

The uniform holding of the Supreme Court

of the United States in actions arising under the Federal Employers' Liability Act is that the amount of recovery should be limited to the pecuniary loss suffered by the beneficiary, and that no recovery should be permitted for mental pain and anguish or loss of society.

In the case of Mich. Cent. R. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176, Judge Lurton, speaking for the court, stated the rule for the measure of damage in actions arising under said act as follows:

"The word 'pecuniary' did not appear in Lord Campbell's Act, nor does it appear in our act of 1908, but the former act, and all those which follow it, have been continuously interpreted as providing only for compensation for pecuniary loss or damage.

"A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judiciously, 'not only to express the character of the loss of the beneficial plaintiff, which is the foundation of the recovery, but also to discriminate between a material loss, which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative, upon which, in the nature of things, it is not possible to set a pecuniary valuation.'" Porto Rico v. Didricksen, 227 U. S. 145, 33 Sup. Ct. 224, 57 L. Ed. 456.

At the trial of this cause the plaintiff introduced in evidence mortality tables for the purpose of showing her expectancy. Objection was made to the introduction of this evidence for the reason that it was incompetent, irrelevant, and immaterial. Over the objection of the defendants this evidence was permitted to go to the jury to be by it considered. There is no contention but that mortality tables may be used in evidence for the purpose of establishing the expectancy of the deceased, and to enable the jury to have some criterion by which to determine the probable length of the decedent's life. It, however, is not permissible to introduce mortality tables for the purpose of showing the expectancy of the surviving widow's life, for the reason that the amount of her recovery does not depend upon the probable duration of her life; regardless of what her expectancy might be, or what her age is, she is entitled to recover whatever loss she has sustained by reason of the wrongful death of her husband. This question does not seem to have been presented in any case that has been before this court. The Supreme Court of Pennsylvania has passed on this question in the case of Emery v. Philadelphia, 208 Pa. 492, 57 Atl. 977, and the court said:

"Appellant's assignment of error, however,

is not founded on the simple admission of the Carlisle Tables, but on their admission as evidence of the expectation of life of plaintiff's husband, without accompanying proof of plaintiff's own age and expectation. It is argued that while the husband might have lived a certain number of years, yet the wife might not, and therefore her damages ought to be limited by the double contingency of their joint lives. The point is new, and the fact that it has not been raised before in any of the very numerous cases where it would have been appropriate, if sound would seem to indicate that it has not appeared tenable to the professional mind. We are of this opinion. The life of the husband having been terminated by the accident, its probable duration, in the regular course of nature, must, as already said, be approximated by the best evidence attainable, even though that leads only to conjecture. But the widow, plaintiff, is living, and is entitled now to compensation for what she has lost by her husband's death. To complicate the question by another conjecture as to her expectation of survivorship would add further uncertainty to the result without being so clearly demanded by reason or justice as to be imperative or even advisable."

We think the foregoing rule is sound and applicable to the case at bar. The amount that the plaintiff is entitled to recover in this case does not depend upon her age, and for that reason any evidence pertaining to her age was incompetent and should not have been admitted. If it is admissible to introduce mortality tables to prove the probable expectancy of the surviving widow, then it would logically follow that a woman 25 years of age would be entitled to recover a much larger sum than a surviving widow of 75 years of age. We know of no such distinction having been made by the courts of this state, and do not believe that any such was intended under the law which gives the right of action to the surviving widow.

The next objection urged by defendants is to instruction No. 3 that was given by the court in the general instructions. This instruction is as follows:

"You are further instructed that, in an action by a widow to recover damages for the death of her husband, the purpose of the law is compensation and it is not the loss of the deceased but the loss of the survivors, which is to be estimated; and this involves not merely the probable earnings of the deceased, but the probability of such earnings inuring to the surviving wife. If you find for the plaintiff in this case, you should endeavor to assess the damages at her pecuniary loss by reason of the death of her husband, and, in reaching the amount of this loss, you should take into consideration what her husband had done for her in the past towards her

support and maintenance, and what, considering her means and his earnings, as well as his habits and disposition, he would be likely to have done in the future. The law does not contemplate and speculate on the probable earning of the deceased, but simply aims to make good to the survivors that which they have probably lost by his death; and you should endeavor, fairly and impartially, if this loss is established by the evidence, to give the plaintiff compensation for her loss by reason of the death of her husband."

The particular part of this instruction which is criticised by the defendants is that part which reads as follows:

"And what, considering her means and his earnings, as well as his habits and disposition, he would be likely to have done in the future."

We are inclined to agree with counsel for defendants that the part of the instruction which directed the attention of the jury to consider the means of the plaintiff in determining the amount of her recovery should not have been given by the court. The amount that the plaintiff in entitled to recover in this case does not depend on her means. Regardless of whatever amount of property she might possess, the law imposes upon her husband the duty to maintain and support her. That she has a right to, and when she has been deprived of her husband she is entitled to recover for the pecuniary loss suffered, and the amount does not depend upon her means or upon her wealth. The law makes no distinction in the amount that a surviving widow is entitled to recover between one who is possessed of wealth and one who has no wealth at all, and for that reason the court should not have directed the attention of the jury to a consideration of her financial standing when deliberating on the evidence in the case. This rule, if permitted to stand, would soon result in distinction being made between one of wealth and one of poverty, when no such distinction is recognized in law. Such an instruction is calculated to be highly prejudicial in an action of this class and character. C., R. I. & P. Ry. Co. v. Hambel, 2 Neb. (Unof.) 607, 89 N. W. 643; Pittsburg, Ft. Worth & C. R. Co. v. Powers, 74 Ill. 341; Louisville & Nashville Ry. Co. v. Collinsworth, 45 Fla. 403, 33 South. 513; Smith v. Chicago. R. I. & P. R. Co., 42 Okla. 577, 142 Pac. 398.

The next error urged by defendants is instruction No. 4, that was given by the court to the jury in his general instructions. This instruction is as follows:

"You are further instructed that although

you may believe that the plaintiff's deceased was guilty of contributory negligence, still, under the rule of the last clear chance in law, if you further believe from the evidence that the employes of defendants in charge of the engine of defendants (or either of them) discovered the peril of said deceased in time to have stopped said engine and train, and avoided striking and injuring him, you should find for the plaintiff regardless of the contributory negligence of the deceased if you believe he was negligent."

There is an objection urged against this instruction on the ground that the facts in this case do not warrant the submission of the question of the last clear chance to the jury.

The evidence under which this instruction is sought to be justified is that of the witness W. H. McClain, who testified for the defendants. His testimony with reference to this phase of the case is as follows:

"Q. Did you see this Taylor Lee that was killed? A. Yes, sir. Q. Where did you see him? A. I saw him when he was within about ten, or possibly twelve, steps of the track. Q. Where was he with reference to the restaurant building when you saw him? A. I don't understand where that building is. Q. Do you know where that little brick building is adjacent to the track? A. Yes, sir. Q. Where was he with reference to the outer of that building, for instance? A. Well, he was—I judge he was about four or five steps this way from that store; he was something like ten steps, I suppose. Q. How far were you from the sidewalk crossing when you saw him? A. We were on the opposite side of the street—the north side of the street. Q. What did you do to direct his attention? A. I whistled through my teeth and I hollered at him, and then I whistled again. Q. What did you say to the engineer, if anything? A. I hollered to the engineer we struck a man. Q. At that time where was the man? A. In the center of the track. Q. On the sidewalk or off of the sidewalk? A. Off of the sidewalk. Q. Which way? A. South—Just a little south of the sidewalk. When he stepped off of the sidewalk he turned rather to the left and south. Q. Angling across the track? A. Yes, sir. Q. Was he hit on the crossing or not? A. Well, he wasn't direct on the crossing where the street goes straight across the track. Q. Was you looking at him all the time from the time you first saw him? A. Just as sure as I am looking at you. Q. Did he look any direction before going on the track? A. He didn't. Q. Did he stop? A. He did not. Q. What did he do? A. When he walked out, he walked as though he was going to check up, like lots of people do, and after I seen he would not stop is when I whistled him the last time and when he got in the middle of the track he kind of stopped and jerked himself back, and the engine hit

him before he could get his balance and go ahead."

On the cross-examination the foregoing witness testified as follows:

"Where was you when—where was your engine when you saw him there first? A. He was away back up past the edge of that barn. Q. Between the north boundary of Cherokee street and the barn? A. He was right there. Q. How far north of the north boundary of Cherokee street? A. Just before we came on the street. Q. You stated a minute ago you was back by the barn? A. Just before we got on the street. Q. How many feet from here to the barn (designating)? A. I judge it is about a hundred and fifty feet. Q. You was back here a hundred and fifty feet when you saw him? A. Yes. Q. Between this north boundary of Cherokee street and the barn—was it from where you were to the barn—back as far as the barn? A. Back about as far as the barn. Q. It would be about like that, wouldn't it (designating)? A. Right there (designating). Q. How many feet, then—about how many feet were you from—was it from where you were to where this street comes across here, where the sidewalk is on—how many feet were you from him when you first saw him—just about how many? A. What is the street—one hundred and fifty feet wide? By the Court: Yes, a hundred. A. I will say it was two hundred and fifty feet. Q. Could you see his face? A. Yes. Q. Looking right at you? A. No; he wasn't looking at me. Q. Which way was he looking? A. Looking this way (designating). Q. Going on west? A. Yes. Q. You was ringing the bell? A. Yes, sir. Q. And the engineer was whistling the whistle? A. Yes. Q. Then, did you keep your eyes on him from the time you saw him ten feet from here (designating) until you struck him. Q. Did you holler before you hollered to the engineer? A. Just as we struck him. Q. Did you holler before you struck him? A. No, sir. Q. You said—What did you say? A. I said we have struck a man."

The witness A. C. Carter testified for the plaintiff, and was the only other witness who saw the accident, and that part of his testimony which was relevant to this point is as follows:

"Now with reference to the time that Taylor Lee was struck, how close to that time did you see Taylor Lee? A. The time that he was struck? Q. Yes; with reference to the time the engine struck him? A. I was just one block behind him. Q. I mean with reference to the time it struck him—did you see him at that time? A. Well, before he was struck you mean? Q. At the time he was struck. A. Just as soon as the train struck him I ran down there. Q. Did you see it strike him? A. Yes, sir; I seen it when it knocked him over; it looked like the west side of the track. Q. Where was

ne. when he was struck? A. Going right across the track at the corner of the building —that little restaurant down there on the corner. Q. Taking the railroad as going north and south, and the crossing as going east and west across the track, was he above the crossing or below the crossing or on the crossing? A. He was going on down the sidewalk—it goes right straight across. He wasn't out in the street, but he was on the sidewalk, going on down the sidewalk. Q. I mean at the time he was struck, was in the crossing or above the crossing or below the crossing? A. He was going right across the track. There is a light down there on the corner, I think, and he was, I could see, under that light."

On cross-examination the above witness testified as follows:

"I am asking you how far was the train from him when you first saw it? A. Well, I don't know, sir. Q. Let's estimate the distance. A. About as far as to the building. Q. I want you to estimate the distance of it in feet. A. Well, I guess about a hundred feet, I guess. Q. About a hundred feet? A. I reckon so. Q. What was Taylor Lee doing at that time? A. He was going on down that way (designating). Q. What was he facing? A. Going west. Q. Did he turn his head either way? A. I didn't pay any attention to him about turning his head. Q. Did he look to the north? A. I don't know. Q. Was you looking at him to see? A. I was looking at him and the train both. Q. You didn't see him turn to the north? A. No, sir: nor to the south either. Q. Did he stop before he stepped on the crossing? A. No, sir. Q. He didn't? A. No, sir; I don't think he did—I didn't see him; they met up there about the same time—just about the same time they met."

Under the foregoing evidence the court submitted to the jury the instruction complained of by the defendants, under the theory that, although the plaintiff might have been guilty of contributory negligence in going on the right of way' or on the track, that if the defendants discovered his peril, and did not exercise care to prevent injuring him, that it would be liable in damages, notwithstanding the negligence of the deceased in attempting to cross said track at that time and place. The rule known as the last clear chance or humanitarian doctrine has been approved by the courts of this state wherever the facts warrant its application. It is recognized as an exception to the general rule that contributory negligence of the party seeking a recovery would be excused if the defendant saw the perilous situation of the deceased in time to have prevented the injury by the exercise of ordinary care. This is recognized as an ex-

ception to the rule that contributory negligence bars a recovery without reference to the degree of negligence on his part, but this rule has well recognized exceptions, one of which is, that the negligence of the plaintiff must not be contemporaneous with the negligence of the defendant. Or, in other words, if the negligence of the plaintiff is concurrent with the negligence of the defendant, then a recovery is denied. The rule as announced by the great weight of authority is that the doctrine of the last clear chance recognizes primary negligence on the part of the plaintiff, but that such negligence has ceased, and after such negligence has ceased that his condition of peril has been discovered by the defendant, and, notwithstanding the prior negligence of the plaintiff, the defendant might, by the exercise of ordinary care, have refrained from inflicting any injury on plaintiff. When these conditions exist the courts universally permit the plaintiff to recover. White on Personal Injury, vol. 1, p. 525, par. 398; Shearman & Redfield on Negligence, vol. 1, par. 99; Holmes v. S. Pac. Ry. Co., 97 Cal. 161, 31 Pac. 834; Clark v. Wilmington Ry. Co., 109 N. C. 430, 14 S. E. 43, 14 L. R. A, 749; Kellny v. M. P. Ry. Co., 101 Mo. 67, 13 S. W. 806, 8 L. R. A. 783; Holwerson v. St. L. Ry. Co., 157 Mo. 216, 57 S. W. 770, 50 L. R. A. 850; Himmelwright v. Baker, 82 Kan. 569, 109 Pac. 178; Chas W. Dyerson v. Union Pac. Ry. Co., 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132, 11 Ann. Cas. 207.

In the case of O'Brien v. McGlinchy, 68 Me. 552, is a clear and succinct statement of the law on this subject, to wit:

"But in cases falling within the foregoing description, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant. This rule applies usually in cases where the plaintiff or his property is in some * * * danger from a threatened contact with some agency under the control of the defendant when the plaintiff cannot and the defendant can prevent an injury. * * * But this principle would not govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them."

From the testimony of the witness Carter, it will be seen that the deceased in this case was going west on Cherokee street, and that when he reached the right of way did not stop or hesitate, but walked directly on

the railroad track, and just as he reached the center of the track was struck by the train. So, taking the most favorable view of this evidence, if there was any negligence on the part of the plaintiff in going on said track, it continued up until the time that the injury occurred, and, in order that the foregoing instruction might be applicable, it must be admitted that it was contributory negligence or prior negligence on the part of the plaintiff to go upon said track, and before the question is entitled to be submitted to the jury on the last clear chance doctrine it must appear that the negligence on the part of the plaintiff was not concurrent with or contemporaneous to the negligence of the defendant. It is urged by counsel for the plaintiff that this instruction is justified by reason of the evidence of the witness McClain, who was fireman on the train, and whose testimony shows that when he was about 250 feet north of the path that crosses the right of way at the intersection of Cherokee street and of the railroad track that he saw the deceased walking towards the track same few feet east of the right of way. It is argued that the agents, servants, and employes that were operating this train had ample opportunity to have stopped the train before coming in contact with the deceased. With this contention we are unable to agree for the reason that the mere fact that Taylor Lee was walking towards the track at said intersection was not sufficient to warrant the agents, servants, and employes in the belief that he was going to attempt to cross the track before said train reached the crossing. On the contrary, the engineer and fireman had a right to presume that the deceased would not place himself in a position of peril, but that he would stop when he reached said track if the train was at such close proximity that it would be dangerous to attempt to cross the track. The evidence discloses upon the part of the witnesses that Taylor Lee was a man who possessed ordinary faculties, a good eyesight, a good hearing, and was a man of quick action. This being true, the employes of the defendant could not presume that he would attempt to cross this track just as the train reached the intersection. The law is well settled in this jurisdiction that those who are operating passenger trains near a crossing have a right to presume that persons approaching the crossing at that time will not place themselves in a perilous position. In the case of Clark v. St. L. & S. F. Ry. Co., 24 Okla. 764, 108 Pac. 361, Judge Kane, in speaking of this question, stated:

"In the case at bar there was no evidence tending to prove that the engineer in charge of defendant's engine discovered the peril of the plaintiff until the accident occurred. The mere fact that the engineer may have seen the plaintiff approaching the track in a covered wagon would not necessarily put him on his guard as to the peril of the plaintiff. The engineer has the right to presume that a person thus approaching the track has not omitted the ordinary precautions imposed upon him by law, and will stop in time to avoid an injury."

Under the evidence of the witness Carter, the deceased and the train met at almost the same moment at the intersection; hence there could have been no time intervening between the discovery of his peril and when he was struck sufficient to enable the defendants to have stopped the train. The recent case of C., R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250, is a case somewhat similar to the case at bar. In that case the plaintiff attempted to invoke the doctrine of the last clear chance on the testimony of J. T. Masser, fireman, who testified as follows:

"When I first saw Mr. Barton that morning he stepped out from behind that little side window and started toward the train I was sitting in the window (on the engine) and began to holler at him. The engine was just west of the depot. The service application of the air had been made before that. I don't know how long it was after I saw Mr. Barton's danger before we struck him. I sat where I could see on that high bench, and I noticed a man come out, and then he stopped and hesitated and reached over like that —I don't know, probably 10 or 12 seconds or some such matter as that. I done just what occurred to me to do. I hollered at him to keep him from being hit. There was nothing else I could do. I had no occasion to shout to him unless I thought he was going to get hurt. I saw the track, I saw the man reach for—I don't know what he reached for—paper, or something on the track. In reaching for this package, he didn't stop, but staggered towards the train as though he was dizzy or something."

From the foregoing evidence by the witness upon the part of the railroad company the plaintiff attempted to recover on the doctrine of the last clear chance, and the court, in speaking of this question, said:

"This evidence does not bring the case within the doctrine of last clear chance, as announced in A., T. & S. F. Ry. Co. v. Baker, 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; Clark v. St. L. & S. F. R. Co., 24 Okla. 764, 108 Pac. 361; Oklahoma City Ry. Co. v. Barkett, 30 Okla. 28, 118 Pac. 350."

We do not believe that the facts in this case are sufficient to warrant the court in submitting to the jury the instruction com-

plained of, for the reason that the evidence, under the holdings of this court, does not entitle the plaintiff to invoke this rule.

There are various other assignments of error. but, under the foregoing views, it is unnecessary to discuss them. Counsel for plaintiff earnestly insists that this case should be affirmed for the reason that there is no substantial error committed in the trial. With this contention we are unable to agree. The evidence in this case is conflicting, and a recovery has been strongly resisted by the defendants on the ground that the plaintiff did not exercise ordinary care. and that the injury inflicted was the direct and proximate result of the deceased's contributory negligence. As it will necessitate a new trial of this case, we refrain from expressing any opinion on this point, but suffice it to say that the instruction submitted to the jury by the court that invoked the rule of law known as the last clear chance was prejudicial to the rights of the defendants. and, under the facts in this case, should not have been given.

We therefore recommend that the judgment of the court be reversed, and the cause remanded to the district court of Wagoner county, Okla., for a new trial.

By the Court: It is so ordered.