Note.—See under (1) 28 Cyc. pp. 267, 1257, 1258. (2) 28 Cyc. pp. 1257, 1258, 1263;

anno. 12 L. R. A. (N. S.) 537: 17 L. R. A. (N. S.) 741; 19 R. C. L. pp. 1119-1121; 4 R. C. L. Supp. p. 1309; 5 R. C. L. Supp. p. 1059. (3) 28 Cyc. pp. 1269, 1270. (4) 28 Cyc. p. 1301. (5) 28 Cyc. pp. 1266, 1301.

---

### ST. LOUIS-S. F. RY. CO. v. HENSON, Adm'x.

No. 16630—Opinion Filed April 13, 1926.

Rehearing Denied June 8, 1926.

**1. Master and Servant—Defective Machinery—Assumption of Risk.**

When an employee knows of the defect in certain machinery placed in his charge and appreciates the risk that is attributable to it, then if he continues in the employment without objection or without obtaining from the employer or his representative the assurance that the defects will be remedied, the employee assumes the risk, even though it arises out of the employer's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for the performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man, under the circumstances, would rely upon such a promise.

**2. Same — Action for Negligent Death of Servant—Issue for Jury.**

In this case, held, that in view of the conflict of evidence as to the circumstances under which the intestate was killed, the question of assumption of risk was properly presented to the jury.

**3. Same—Amount of Recovery — Evidence of Life Expectancy of Servant and Dependent Mother.**

In an action by intestate's mother as his administratrix for his wrongful death while in defendant's employ evidence of his expectancy of life and that of his mother is admissible upon the question of her financial loss.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Theodocia Annie Henson, administratrix of the estate of LeRoy Henson, deceased, against the St. Louis-San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. T. Miller, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiff in error.

Anglin & Stevenson and Suits & Hull, for defendant in error.

Opinion by PINKHAM, C. This action was instituted on the 2nd day of October, 1922, by Theodocia Annie Henson, administratrix of the estate of LeRoy Henson, deceased, defendant in error, as plaintiff, against the St. Louis-San Francisco Railway Company, plaintiff in error, as defendant, to recover damages which she sustained as administratrix through the alleged negligence of the said railway company, which resulted in the death of the said LeRoy Henson. The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

Plaintiff's petition alleges that she said LeRoy Henson was an employee of the defendant in its railway shops at Frances, Okla., where he was employed in running and operating a certain engine, which was an air compressor and engine combined, and which was in a defective condition, and that said LeRoy Henson had, prior to the date of the accident involved in this case, complained to the defendant of said engine, and advised the agents, servants, and employees of defendant, that repairs ought to be made thereon, and that defendant promised to repair said engine and put it in good condition, and that depending on said promise the deceased continued in the employ of the defendant, but notwithstanding said promise the defendant failed and neglected to make said repairs; that the said deceased had only been operating said engine a few days when, in the course of his employment, in order to start said engine, it became necessary to open the throttle thereon sufficiently for the steam in the engine to affect the pressure of the air in the compressor, and then to pry the fly-wheel of said engine off center; and that when he did so the engine started with such force that it caught the pole which he was then using in the operating of the engine, before he could withdraw it from the fly-wheel, and said pole struck him over the head, resulting in injuries from which he died on the following day, and that said injuries and death of the said LeRoy Henson were caused by the negligence and carelessness of the defendant, for which the plaintiff seeks damages in this action.

For answer to the plaintiff's petition the defendant denies generally all of the allegations, and further states that if it was negligent at the time alleged in plaintiff's petition, which is not admitted, the negligence and carelessness of plaintiff's intestate contributed to that of defendant, and without which said injury would not have been sus-

tained. The defendant further alleges that the injuries complained of were the result of one of the ordinary dangers incident to such employment, and were assumed by the said LeRoy Henson when he entered the employ of the defendant. Upon the issues thus joined a trial was had, resulting in a verdict in favor of the plaintiff, Theodocia Annie Henson, in the sum of $10,000. Motion for new trial was overruled, exceptions saved, and judgment rendered in accordance with the verdict of the jury.

For reversal of the judgment all of the specifications of error are presented under the following propositions: First, the verdict of the jury is not supported by sufficient evidence; second, the court erred in his instructions to the jury; third, the court erred in refusing to give to the jury instructions requested by the defendant; fourth, the court erred in admitting incompetent, irrelevant, and prejudicial testimony offered by plaintiff and objected to by defendant; and fifth, that the verdict is excessive and is not supported by sufficient evidence.

The facts disclosed by the record are: That LeRoy Henson, plaintiff's intestate, received injuries on the 15th day of June, 1922, while working in the defendant railway company's shops. He had been in the employ of the defendant for some two years prior to his death. For some two months prior to his death he was in charge of an air compressor located in the shops of the defendant. The evidence shows that the air compressor was used to compress air for blowing flues, running cinder conveyor, air motors, and running motors in the car department, and for boring holes and other things of that kind. It was a single cylinder engine with an air end and steam end, the steam coming down from the boiler in the same room to the air compressor and going out through an exhaust. The compressor was set on a concrete foundation about two feet high with two large fly-wheels, one on each side of the engine.

One of the plaintiff's witnesses, who had worked for the defendant a number of years as machinist helper, and who had worked many times upon the air compressor in question, testified that this air compressor was run with about 100 pounds of steam; that it would pump the air into a reservoir on the outside of the building, and that when the air pressure equaled or almost equaled the steam pressure, the engine would stop; that the pressure from the compressed air tank was at all times upon the engine itself, for the reason that the automatic

valve in the ground and near the compressor would not work; that this automatic valve was supposed to open when the air was going from the engine to the tank and closed to keep the air from coming back on the engine; that this had never worked, leaving the full pressure on the cylinder head of the engine; that when this engine would stop with 90 or 100 pounds of air pressure against it, it was impossible to start the engine without cutting this pressure off, or using a bar or something of the kind to pry it off center, as the engine always stopped on center; that there were two cocks which could be used to cut this pressure off, and when they were closed the engine could be started without trouble, but these valves were not easily adjusted—they were getting out of fix constantly—and that finally the foreman had them "set" and told the employes who had control of the engine to let the valves alone and keep their hands off of them.

It appears from the evidence that if the person in charge of the engine did not close these valves or use a bar in order to start the engine, it would require from 45 to 60 minutes for the air to run out, and as there were many hands in the shops depending on this air to help them in their work, it was necessary to resort to some other means that would at once start the engine. At the time of deceased's injury he was attempting to start the air compressor machine by prying the drive wheel off center with an iron rod or bar, and when the engine started it did so with great force, causing the iron rod to strike the deceased on the body and neck, inflicting the injuries from which he finally died. It further appears from the evidence that the deceased, with about four hours' instructions, or in helping another man about four hours, was placed in charge of this engine, and that he complained of the condition of the machine to the day foreman of the defendant's shops, in regard to a defect in the machine, and that the foreman told him to use the bar to start it, and that he would have it repaired. This conversation occurred about three or four days prior to the accident.

It was agreed by the parties that the air machine in question was used in interstate commerce, and that this case is governed exclusively by the federal act known as the Federal Employers' Liability Act.

It is contended by the railway company that the intestate assumed the risk of the situation when he used an iron bar to start the engine, because the evidence shows, it is claimed, that the deceased realized the danger and the imminence of it, and had made complaint to his foreman in regard to it. The case principally relied upon in support of this proposition is Seaboard Airline Ry. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, 34 S. C. Rep. 635. In that case Mr. Justice Pitney, speaking for the Supreme Court of the United States, said:

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then, if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man, under the circumstances, would rely upon such a promise."

See Roberts, Federal Liabilities of Carriers, vol. 1, page 992.

The fact that the deceased knew it was dangerous for him to start the machine in question with the iron bar must be considered, in connection with the further fact clearly disclosed by the evidence that the general foreman, under whom he worked, had promised, upon the complaint of the deceased and of other employees, that the defect would be removed or remedied, and advising the deceased to use the iron bar in the meantime, and that relying upon that promise the engine had been started a great many times by the use of the bar, and from which use no injuries resulted, and while it was realized that it was dangerous to do so, it cannot be said, as a matter of law, that it was imminently dangerous within the rules stated in the Seaboard Airline Ry. Co. v. Horton Case, supra. In other words, under such a state of facts, before it could be said as a matter of law that plaintiff's intestate assumed the risk of injury, the danger must have been imminent, as well as obvious.

It is true that one of the defendant's witnesses, the night foreman, testified that instructions had been given not to use the iron bar in starting the machine, and that there was a safe way to start the engine as by allowing the air to leak out, or by calling for help if it was necessary to start the machine before the air leaked out, from which testimony the conclusion is drawn by counsel for defendant that, admitting that the

general foreman had advised the deceased to use the iron bar until the defect was remedied, still, it is contended there was a safe way to start the machine without resort to the use of the bar, which it is claimed was imminently dangerous, and that therefore the deceased assumed the risk. We are unable to agree with this proposition. As was said in the case of McGovern, Adm'x, v. Philadelphia & Reading Ry. Co., 235 U. S. 389, 402:

"We have given the testimony in general outline, but enough to show that what conflict there was in it was for the jury to judge of, and what deductions there were to be made from it were for the jury to make."

It is further contended that the trial court committed numerous errors prejudicial to the rights of this defendant in his instructions to the jury. It is urged that paragraph 11 of the court's instructions is erroneous and requires a reversal of this case. That instruction reads as follows:

"The defendant, as one of its defenses, has pleaded what is known in law as 'assumption of risk.' Under the law the deceased assumed all the ordinary risks and dangers incident to the work which he was employed to perform, as well as all the extraordinary risks and dangers, including such as were created by the defendant's negligence, if any, after he became aware of the existence of such risks and dangers. In this case, if the deceased knew of the condition of the engine in question, and knew that it was unsafe to start it by use of a bar, yet, if it did not appear imminently dangerous, and he made complaint to the foreman of the roundhouse concerning its unsafe condition, and the said foreman promised to remedy the defect within a short time, the deceased had a right to rely upon such promise and continue to operate the said engine as usual for a reasonable time, and in so doing it could not be said that he assumed the risk of injury on account of the defective condition of said engine even though he may have known that said engine was defective and that the use of said bar in starting same was unsafe."

The argument is that if the starting of the machine with the bar was imminently dangerous, the deceased was not justified, in any event, in so starting such machine. We have already concluded that while the evidence discloses that it was dangerous to use the bar in starting the machine, it was not, in view of the admitted facts and all the circumstances surrounding this case, imminently dangerous to start the machine in the way it was started by plaintiff's intestate.

It is further contended that, granting the condition put in the court's charge complained of, that it would not appear to be imminently dangerous but was dangerous and unsafe, then it is argued the deceased was not justified in using the bar if there was a safe way in which to start the machine, and further that the promise of reparation did not relieve the plaintiff of the defense of assumed risk unless the deceased was caused to continue the work by reason of the promise of reparation, and it is said this condition the court failed to cover in his charge.

We conclude the instructions complained of properly defined the term "assumption of risk," and correctly stated the law applicable to the facts of the case.

Whatever force there may be in the argument, to the effect that there was a safer way to start the machine without resorting to the use of the iron bar when applied to a skilled mechanic, it can have little or no weight when applied to the facts in this case. The deceased had been, it appears, suddenly taken from a position where he had been performing the simple duties of wiping engines and building fires, working as a common laborer about the roundhouse, and placed in charge of a complicated piece of machinery admitted to be out of repair. He was totally inexperienced and obeyed the orders of his superior upon the promise that the machinery would be repaired.

It is further urged that instruction No. 12 given by the court is also erroneous. The argument is that this instruction had the effect of putting a higher degree of duty upon the railway company than is justified under the federal act. We are unable to agree with this contention. The instruction criticised specifically states that if the injury and death were the direct and proximate result of the negligence and carelessness of the defendant in failing to furnish a safe place to work, safe tools, appliances, and machinery, or in failing to furnish a reasonably safe method of doing the work assigned to him by the defendant, the jury should return a verdict in favor of the plaintiff for all damages resulting to the plaintiff from said injury and death, unless in addition thereto the jury should find from the evidence, facts, and circumstances disclosed upon the trial, that the deceased was also guilty of negligence which contributed to causing his injuries and death, in which case such negligence on his part should be taken into consideration by the jury in determining the amount of damages sustained by the plaintiff through his death, diminish-

ing the amount of damages which the jury would otherwise award to the plaintiff in proportion to the negligence of the deceased, as compared with the combined negligence of himself and the defendant. We perceive no error in this instruction. In the Seaboard v. Horton Case, supra, the court said:

"It was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence."

The trial judge based the right of recovery in both the instructions criticized upon the question as to whether or not the defendant was negligent.

It is further urged that paragraph 13 of the court's instructions is erroneous. The instruction complained of states, in substance, that in determining the amount of damages the jury may properly consider the circumstances and life of deceased at the time of his death, the life expectancy of the mother, as well as the deceased, the character and habits, occupation and prospects in life, of the deceased, his previous health and physical condition, his earning capacity, the support and protection he would have afforded to the plaintiff, and award such damages as the mother sustained as a result of the negligence of said defendant.

In Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 Pac. 678, cited by defendant, the court said:

"In such action the measure of damages is the pecuniary loss suffered by the widow and minor children by reason of being deprived of the care, protection, and support of the deceased, to be determined by the age, physical condition, occupation, earning capacity, habits, and the use made by the deceased of his earnings."

The cases of Kansas City, M. & O. Ry. Co. v. Roe, 50 Okla. 105, 150 Pac. 1035, and Lusk v. Phelps, 71 Okla. 150, 175 Pac. 756, are also cited by defendant in support of the proposition that the jury were deprived of the benefit of the rule announced in these cases in the instruction complained of. We observe no material conflict between the cases cited and the instruction given in the instant case, with respect to the law governing the measure of damages in cases of this character.

It is contended that this instruction, No. 13, has been held to be prejudicial error by this court in a recent opinion. The case relied upon is Mid-Co Petroleum Co. v. Allen, 110 Okla. 101, 236 Pac. 426. The third paragraph of the syllabus reads as follows:

"In the trial of an action, wherein a surviving mother is seeking to recover damages for the wrongful death of her son, it is error to admit in evidence mortality tables to prove the expectancy of the surviving mother."

An examination of the Mid-Co Petroleum Co. v. Allen Case, supra, shows that the doctrine there announced is based entirely on the case of Missouri, O. & G. Ry. Co. v. Lee, 73 Okla. 165, 175 Pac. 367. It is apparent that the Mid-Co Petroleum Co. v. Allen Case, relied on, overlooked the case of Whitehead Coal & Mining Co. v. Winton, 107 Okla. 99, 230 Pac. 509. In the Whitehead Coal & Mining Co. v. Winton Case, supra, the court said:

"In this case the plaintiff seeks to recover on the theory that her deceased son, if he had lived, would have contributed to her support during the remainder of her natural life. The theory is a proper one. The probable duration of her life is, therefore, material for consideration by the jury in determining the amount of money which the deceased would likely have contributed to her support had he lived. The mortality table is generally recognized as competent evidence to prove such fact. The fact is material, and, therefore, we think the evidence is competent. * * * We, therefore, hold that the mortality table was competent evidence, proper to be introduced by either party, and the court did not err in receiving same. The opinion of this court in the case of Missouri, O. & G. Ry. Co. v. Lee, et al., supra, is overruled."

Mathematical accuracy in measuring the pecuniary loss suffered is not practical, and in general it may be said that the basis for the allowance of damages may be found in the character, habits, capacity, business, and condition of the deceased, as well as the age, sex, circumstances, and condition in life of the next of kin. Missouri Pac. Ry. Co. v. Moffat, 60 Kan. 113, 55 Pac. 837.

In an action by intestate's mother, as his administratrix, for his wrongful death while in defendant's employ, evidence of his expectancy of life and that of his mother is admissible upon the question of her financial loss. De Witt v. Floriston Pulp, etc., Co., 7 Cal. App. 774, 96 Pac. 397; Chambers v. Kupper-Benson Hotel Co., 154 Mo. App. 249, 134 S. W. 45; Serdan v. Falk Co., 153 Wis. 169, 140 N. W. 1035.

In 17 C. J. 1354, it is said:

"Under most, but not under all statutes, where the beneficiaries are dependent in whole or in part on decedent, evidence is admissible to show the ages and expectancy of life of the beneficiaries of deceased, as a

proper matter to be considered in fixing the amount of damages. And it has been held that, if there is actual loss of pecuniary aid, the jury in estimating the amount of such loss may consider the probable length of the respective lives of the deceased and next of kin, even though there is no legal claim for pecuniary aid."

It clearly appears that at the time the opinion was written in the Mid-Co Petroleum Co. v. Allen Case, supra, the Whitehead Coal & Mining Co. v. Winton Case, supra, had already overruled the case of Missouri, O. & G. Ry. Co. v. Lee, supra, which is the only case cited and relied upon in the Mid-Co Petroleum Co. v. Allen Case, supra. The Whitehead Coal & Mining Co. v. Winton Case, supra, has never been overruled.

In the instant case the record shows that the life expectancy of the mother at the age of 55 was 17.4 years; that the life expectancy of LeRoy Henson, who was 30 years of age at the time he was killed, was 28.9 years. In this case, since the life expectancy of the mother was something like eleven years less than that of the decedent, the defendant not only suffered no prejudice, but on the contrary was probably benefited by the testimony showing the life expectancy of the mother. That the jury should have some basis for its deliberations as to the amount of damages, and the probable duration of the mother's life, as well as that of the decedent, is highly important, and upon both reason and authority we think the rule announced in the case of Whitehead Coal & Mining Co. v. Winton, supra, is sound and should be adhered to.

It is further urged that the court erred in refusing to give instructions to the jury requested by the defendant. The instructions given by the court fairly state the principles of law applicable to the case. The requested instructions do not, we think, present the question of imminence of danger, and they ignore the rule of law announced in the Seaboard Airline Ry. Co. v. Horton Case, supra, to the effect that the employee relying upon a promise of the defendant or his representative to remedy a defect in the machinery, and that relying upon the promise, he does not assume the risk unless it be so imminent that no ordinarily prudent man, under the circumstances, would rely upon the promise. None of the requested instructions could have been given without correction or modification, in which event it is not error for the court to refuse to give them. Smith et al. v. Pulaski Oil Co. et al., 88 Okla. 47, 211 Pac. 1047.

118—5

The further contention, that the verdict of the jury is excessive and the amount thereof is not supported by sufficient evidence, is, we think, untenable. The record shows that the deceased was the only support of his mother; that he had never married; that they lived in a small house, and that he turned over to his mother $40 to $50 every two weeks; that he paid all the taxes on the place and contemplated building a better home for her to occupy, and had expressed his intention to support her in the future.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.