**Wayne B. LOLLAR, Appellant,**

v.

**James A. ELLIOTT, Appellee.**

**No. 51796.**

Court of Appeals of Oklahoma,
Division 2.

May 13, 1980.

Released for Publication by Order of Court of Appeals June 12, 1980.

Woodrow H. McConnell, McConnell & Prescott, Oklahoma City, for appellant.

Robert D. Looney, Jr., Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellee.

BRIGHTMIRE, Presiding Judge.

Plaintiff's effort in this action was to recover damages for injuries he is said to have sustained when the pickup he was driving was struck by another at a highway intersection. The trial judge sustained a demurrer to his evidence and he appeals. We affirm.

---

5. *Goodman v. Norman Bank of Commerce*, Okl., 565 P.2d 372 (1977).

## I

Wayne B. Lollar filed this action claiming that at about 0800 hours on the morning of September 6, 1972 he stopped at a stop sign protecting U.S. Highway 270, looked both directions and, seeing no oncoming traffic, started across 270's four lanes headed south on State Highway 56. Just before he cleared the intersection, however, the right rear of his truck was struck by a 1968 International being driven east on 270 by defendant James Elliott. The cause of the wreck, according to Lollar's petition, is that defendant was (1) driving at "an unlawful and excessive rate of speed"; (2) not keeping a proper lookout; (3) not keeping a "proper distance ahead in which to stop his vehicle"; and (4) driving "in a reckless manner without regard for the safety" of others using the highways.

Defendant answered saying it was not he who was negligent but plaintiff and then cross-petitioned for $862.26 damage to his truck which he said was caused by plaintiff's negligence in failing to yield the right of way to defendant.

In a reply plaintiff pleaded that defendant had the last clear chance to avoid the collision.

The case came on for trial November 7, 1977. Plaintiff testified that he pulled up behind a panel truck stopped headed south in the westernmost lane of highway 56 at a facing stop sign. The panel truck turned right and headed west on 270, plaintiff moved on up to the edge of the intersection, stopped his 1966 Chevrolet half-ton pickup, looked both ways, saw no oncoming cars, "proceeded through the intersection," and when the right rear of his truck was still "one foot" in the intersection it was struck by defendant's truck.

Lollar further said that both intersecting highways consisted of four lanes, each 12 feet wide, and a six foot center island making the total width of 270 about 54 feet, and that his visibility westward on 270 was

some 1575 feet to the crest of a hill. At the scene of the accident, plaintiff said, he examined some skid marks on the pavement which a highway patrol investigator said were laid down by defendant's truck. They were close to the south edge of 270 and extended 35 feet back from the point of impact. According to plaintiff, the International continued east more than 250 feet after the impact before stopping, while plaintiff's truck came to rest 21 feet southwest of the impact location. The colliding drivers did not talk to each other after the wreck, said Lollar, but remained in their respective vehicles waiting for the arrival of investigating officers. Later Lollar went to a physician because of a painful neck and back.

## II

The foregoing is absolutely all of the evidence favorable to plaintiff which has a factual bearing on the fault aspect of the case.[1] Plaintiff argues it is circumstantially sufficient to survive a demurrer. More specifically he reasons that from his testimony that he looked and did not see defendant one can infer that defendant was "at least 1575 feet from the intersection when [plaintiff] entered," and, he continues, "for [defendant] to travel such distance in that certain time required for [plaintiff] to travel 54 feet and yet result in impact, it is wholly reasonable and logical to infer that [defendant] was driving at an excessive speed and/or failed to maintain proper lookout."

We have trouble with this line of thinking. There is simply not enough evidence in the record to make any legitimate inference supportive of malfeasance on defendant's part. An analysis of Lollar's theory discloses it is fatally lacking in certain significant details—one of which is glossed over as that "certain time required to travel 54 feet" across the intersection—and if we supply relevant judicially known evidence in a manner most favorable to him we end up with a remarkably absurd result. For example, we will assume plaintiff's truck is

---

1. We, of course, in reviewing defendant's demurrer, ignore plaintiff's admission that the panel truck which had turned west on 270 "was still obstructing" his view of eastbound traffic when he pulled out into the intersection.

20 feet long. If so then the rear end of the truck would have had to move forward 73 feet to reach a point one foot north of the south side of the intersection rather than 54 feet as plaintiff suggests. Then we will have to assume an acceleration rate from zero to, say, only 15 miles per hour—or an average of 7.5 miles per hour during traversal of the 73 feet. This means it would have taken 6.64 seconds for the rear end of the Chevrolet truck to reach the point of impact. Now if we assume further that when the Chevrolet started across 270 the International was at least 1575 feet to the west, as plaintiff contends, it becomes obvious that to reach the point of impact in 6.64 seconds the velocity of the truck would not only have to have been excessive but would have to have been traveling at an impossible speed of over 160 miles per hour.

On the other hand if defendant was traveling within the speed limit, as he is presumed to have been absent contrary evidence, and if the limit was 55 miles per hour then the defendant could have been 535 feet west of the intersection when plaintiff pulled out[2]—a distance short enough to compel the conclusion that the International constituted an immediate hazard under the circumstances.[3] Proceeding into the intersection would thus be a violation of 47 O.S.1971, § 11–403(b) and an infringement on defendant's right of way by plaintiff.

For these reasons we conclude Lollar failed to prove sufficient facts or circumstances upon which a finding could rest that defendant breached any duty he owed plaintiff causing or contributing to the cause of the accident.

## III

Plaintiff's alternate contention is that the trial court should have let the case go to the jury on the basis of the last clear chance doctrine. We have previously synthesized the decisional law concerning the last clear chance principle or, as it is sometimes called, the doctrine of a discovered peril and noted that while American courts almost universally have adopted the doctrine as a means of ameliorating the harshness of contributory negligence as a defense, the concept has had a broad range of elemental variations. In this state the theory has never been liberally applied.[4] We pointed out in *Willis* that "to create a predicate for recovery on the basis of the doctrine a plaintiff must plead and prove these essential elements: (1) plaintiff negligently got himself into a position of peril; (2) plaintiff's negligence ceased; (3) defendant actually discovered plaintiff's plight after plaintiff's negligence ceased; (4) enough time remained after such discovery to enable defendant to avoid the injury by using due care; (5) defendant failed to exercise such care causing plaintiff harm.[5] Thus, as we further pointed out, it is little wonder plaintiffs have seldom found the theory a means of warding off contributory negligence in this state. So restrictively circum-

---

**2.** The speed limit may have been 65 m.p.h. in 1973, and if so defendant would have been 633 feet back—a distance still too close considering the wide width of the intersection, the fact of a through highway, and the speed expectation of both vehicles.

**3.** For instance, at 55 m.p.h. the International would have been traveling 80.7 feet per second. This is about the only fact we have. Based on this we can speculate that maybe defendant's vision was not blocked by the panel truck and he saw plaintiff pull out and thought plaintiff (a) would go slow enough to let defendant pass; or (b) would stop in the middle of the intersection and let defendant pass; or (c) would drop the hammer and clear the intersection in plenty of time for defendant to pass safely. On the other hand defendant may not have noticed the Chevrolet during the first four seconds of its slow acceleration and by the time he realized it was not going to honor his right of way and reacted he was within a little over 100 feet of the intersection. During a one second reaction time defendant would have covered 80 feet before his brakes locked putting him into a skid 35 feet before hitting the Chevrolet. But again . . . maybe not.

**4.** *Willis v. Joe Brown Trucking Co.*, Okl.Ct. App., 44 O.B.J. 1619 (173).

**5.** *Jester v. St. Louis-San Francisco Railway Company*, Okl., 413 P.2d 539 (1965); *Atchison, T. & S. F. Ry. v. Phillips*, 158 Okl. 141, 12 P.2d 908 (1932); *Isaacs v. Tull*, 131 Okl. 138, 267 P. 1049 (1928); *Missouri, O. & G. Ry. v. Lee*, 73 Okl. 165, 175 P. 367 (1918).

scribed is the doctrine and so stringent its court imposed requirements a plaintiff almost has to prove wilful conduct on the part of a defendant to come within the ambit of the judicial criteria for application of the doctrine.

A review of the evidence we narrated earlier demonstrates rather dramatically that plaintiff proved none of the essential elements of the last clear chance theory and, therefore, it did not become a submissible issue.

The trial court's sustention of defendant's demurrer and the judgment based on that ruling is affirmed.

BACON and NEPTUNE, JJ., concur.