# SMITH et al. v. PULASKI OIL CO. et al.

No. 10218—Opinion Filed Dec. 19, 1922.

(Syllabus.)

1. **Trial — Instructions — Requisites of Requests.**

In order to entitle a party to insist that a requested instruction be given to the jury, such instruction must be correct, both in form and in substance, and such that the court might give to the jury without modification or omission. If the instruction, as requested, is objectionable in any respect, its refusal is not error.

2. **Oil and Gas — Contract for Sale of Gas Production—Construction.**

Where the lessee in an oil and gas lease and another person enter into a contract in writing, by the terms of which all gas then being produced or that may thereafter be produced from a certain tract of land is by the lessee sold to such person, and which contract provides that whenever a well is drilled in and gas produced therefrom, such person at his option may elect to take the gas so produced from said well by furnishing the necessary casing, pipe, and bradenhead, to be placed in the well by the lessee to preserve and protect said gas, held, that the lessee was not obliged to use any other methods or means of segregating or separating the gas from the oil than those provided for in the contract; held further, that if casinghead gas could not be separated from the oil and delivered to such person in the manner provided for in the contract, it was not within the contemplation of the parties when the contract was made, and such person was not entitled thereto.

3. **Same—Rights to Profits from Casinghead Gasoline.**

Where one purchased from the lessee in an oil and gas lease all the gas produced from a certain tract of land, such purchaser is not entitled to the profits derived from the manufacture of casinghead gasoline made from casinghead gas produced from said land.

4. **Appeal and Error—Right to Complain of Favorable Error.**

The giving of an erroneous instruction, which is more favorable to the plaintiff in error than to the defendant in error, will not constitute error which demands a reversal of the judgment.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by John Smith et al. against the Pulaski Oil Company and another for damages for breach of contract. Judgment for defendants, and plaintiffs bring error. Affirmed.

Geo. S. Ramsey, Edgar A. de Meules, Malcolm E. Rosser, A. J. Biddison, Harry Campbell, and Villard Martin, for plaintiffs in error.

Robinson & Mieher, for defendants in error.

NICHOLSON, J. On the 5th day of February, 1912, Herman A. Flechs and wife executed and delivered to Joseph B. Swan, one of the plaintiffs herein an oil and gas lease for a term of five years, upon 40 acres of land in Okmulgee county, said lease providing for the payment to the lessors of one-eighth of all the oil produced and saved from the premises, delivered in tanks or pipe lines, to the lessors' credit, and $150 each year for the production of each gas well while gas therefrom was used off the premises. Afterwards, Swan transferred and assigned said lease to the defendant J. P. Flanagan who thereafter conveyed one-half interest in said lease to the defendant Pulaski Oil Company.

Prior to the 9th day of May, 1912, the defendants had drilled a well on said land and discovered gas in paying quantities, said well producing about 22,000,000 cubic feet of gas per day, this amount being far in excess of that required by defendants for use in their operations upon said land. The plaintiffs, John Smith and Joseph B. Swan, were engaged in the business of selling and distributing gas and were in need of gas for commercial purposes; thereupon, on said 9th day of May, 1912, the parties hereto entered into the following contract:

"This contract and agreement, made and entered into on this the 9th day of May, 1912, by and between the Pulaski Oil Company, a corporation, and J. P. Flanagan, as parties of the first part, and John Smith and J. B. Swan, as parties of the second part.

"Witnesseth: Whereas, the parties of the first part are the owners of an oil and gas mining lease, covering the following described real estate, situated in Okmulgee county, Okla., to wit:

"The northwest quarter of the southwest quarter (N. W. ¼ of S. W. ¼) of section thirty-six (36), township twelve (12) north, range thirteen (13) east, and

"Whereas, said first parties are desirous of selling the gas produced from said wells on said lands to said second parties,

"Now therefore, for and in consideration of the sum of $7,500.00 paid by said second parties to said first parties, receipt whereof is hereby acknowledged and confessed, it is hereby agreed by and between the parties as follows, to wit:

"Said first parties do hereby sell, transfer and convey, all of the gas now being produced or that may be hereafter produced on said premises, to said second parties, except said first parties shall have the use of the necessary amount of gas so produced, for the purpose of operating engines and machinery maintained and operated by said first parties on the premises of above described, as well as for such operating purposes on the eighty acres of land adjacent to said premises on the east side thereof.

"It being understood and agreed that whenever a well is drilled in by said first parties, said second parties at their option may elect to take the gas so produced from said wells by furnishing the necessary casing, pipes and bradenheads to be placed in well by parties of the first part (to) preserve and protect said gas. All such casing, pipes, and bradenheads so furnished by said second parties shall be and remain their property.

"In witness whereof, the parties hereto have set their hands and seals this day and year first above written."

This contract is made the basis of this action.

In the petition of the plaintiffs it is alleged, in substance, that the plaintiffs connected their pipe line with the first well and obtained and marketed gas therefrom until on or about the 7th day of October, 1912, when the defendants removed the pipe from said well and shot the well; within about 24 hours after said pipe had been removed it was replaced in said well, plaintiffs' pipe line connected to the well, and plaintiffs obtained gas therefrom until about the 4th or 5th of November, 1912, when defendants again removed the pipe and again shot the well which resulted in causing the oil and gas to commingle in the well and come out together, and that, although plaintiffs' pipe line was again connected to said well, they got no gas therefrom, and finally their pipe was removed.

It is further alleged that other wells were drilled on said land, some of which produced gas in paying quantities which the plaintiffs elected to take under the terms of said contract, but the defendants either wrongfully drilled through the gas sand into the oil sand, without properly casing said wells so as to save the gas for the plaintiffs, causing the gas and oil to commingle, or wrongfully caused the oil and gas to commingle by shooting said wells and not properly casing the same so as to conserve the gas for the plaintiffs, the result being that the gas was wasted

and lost to the plaintiffs; and alleged a breach of the aforesaid contract, and prayed damages in the sum of $50,000 because thereof.

The defendants in their answer denied generally all the allegations of plaintiffs' petition, except they admitted the execution of the lease from Flechs and wife and admitted the execution of the contract of the sale of gas to the plaintiffs, and further averred, among other things, that they operated said well according to the terms of said lease, and in the manner to best preserve the gas and oil and obtain the greatest benefit to be derived therefrom, and that they adopted all the means known to experienced producers of oil and gas in order to separate and preserve the gas, but that the gas obtained was commingled with the oil, and was what was commonly known as "wet gass," and that it was impossible to separate the oil and gas.

It was further averred that in order to properly operate and develop the premises, and to prevent the oil from being drained from said premises, it was necessary that the wells be drilled down to the oil sand to obtain therefrom the oil; that this was necessary in order to prevent drainage of the oil from said land through offset wells drilled by and belonging to the plaintiffs and to the Deep Fork Oil Company, of which the plaintiffs were part owners.

It is further averred that at the time of the execution of the contract, it was meant and understood by the parties thereto that gas, as used in said contract, meant only gas of a commercial quality, not unduly mixed with oil so as to be known as "wet gas".

The defendants specifically denied that they had violated the terms of said contract in any particular, but averred that they did everything required of them by the terms thereof.

A trial to a jury resulted in a verdict for the defendants, upon which judgment was entered, and to review which this proceeding in error was instituted.

The plaintiffs in error complain of the action of the trial court in refusing to give to the jury a certain instruction requested by them, and in giving certain instructions over their objection. The first complaint is made of the court's refusal to give the following instruction requested by the plaintiffs:

"You are instructed that after the execution of the contract of May 9, 1912, the plaintiffs were the owners of all the gas then being produced from the land, and were entitled to all the gas then being produced from the land, and were entitled to all the gas thereafter produced thereupon, should they elect to take the same by furnishing or paying for the necessary casing, pipe, and bradenheads to conserve the gas, except that the defendants were entitled to sufficient gas to operate the Flechs forty acres and the eighty acres adjoining it on the east, and the defendants were bound to abstain from injuring and destroying plaintiffs' rights to the gas or infringing upon their rights thereto. The defendants were, however, entitled to develop the property and operate the same for oil purposes under the lease from the landowners, but in so doing were bound to exercise due and reasonable care to protect and preserve the gas belonging to the plaintiffs."

While this instruction is in some respects proper, a part thereof is objectionable in that the court was asked to instruct the jury that "the plaintiffs were entitled to all the gas thereafter produced thereupon, should they elect to take the same by furnishing or paying for the necessary casing, pipe, and bradenheads to conserve the gas." There is nothing in the contract which entitled the plaintiffs to the gas by paying for the necessary casing, pipes, and bradenheads, but to entitle them thereto, they were bound to elect to take the same "by furnishing the necessary casing, pipes and bradenheads to be placed in the well by parties of the first part (the defendants) to preserve and protect said gas."

The language of this instruction is too broad. There is nothing in the contract that entitled the plaintiffs to the gas by merely should have furnished the necessary casing, paying for the necessary casing, pipe, and bradenheads, but they were required to furnish the same. By this instruction the jury might have inferred that the defendants etc., and that all the plaintiffs were required to do was to pay therefor. This requested instruction being erroneous, it was not error to refuse it. Blashfield on Instructions to the Jury, sec. 137; Missouri, K. & T. Ry. Co. v. West, 38 Okla. 581, 134 Pac. 655.

Complaint is next made of a portion of the court's instruction No. 10, and instruction No. 26. Instruction No. 10, as a whole, reads as follows:

"You are instructed that under the terms and provisions of the lease contract introduced in evidence under which the defendants operated said forty acre tract of land, the lessees and their asssigns were bound to use care and diligence and in the exercise of such care and diligence were bound to use such ways and means to develop such forty acre tract that were reasonably calculated to cause said tract to be most productive and

remunerative to the lessor and the lessee thereof and to develop said tract within a reasonable time after the discovery of oil or gas thereon in paying quantities, and was likewise bound to protect the outside lines thereof or drill what is known as offset wells to any well on adjoining property. You are instructed that under the evidence in this case an offset well is a well two hundred feet from the outside boundary of the property in question opposite a well an equal distance from said boundary on the adjoining property drilled to the same oil bearing sand. And you are instructed that if natural gas were found in any oil well on said land by the defendants, but by reason of the fact that it was found therein commingled with the oil, that the defendants would not be obliged to use any other method or means of segregating or separating said gas from the oil than are provided in said contract, to wit, by the use of a bradenhead or an extra string of casing or pipes as mentioned in said written contract. And you are further instructed that it is incumbent upon the plaintiffs under and by virtue of said contract to furnish said casing and bradenheads at such times as would be necessary to be used by the defendants in operating said lease without unnecessary delay"

—and that part thereof of which complaint is made is:

"And you are instructed that if natural gas were found in any oil well on said land by the defendants, but by reason of the fact that it was found therein commingled with the oil, that the defendants would not be obliged to use any other method or means of segregating or separating said gas from the oil than are provided in said contract, to wit, by the use of a bradenhead or an extra string of casing or pipes as mentioned in said written contract."

Instruction No. 26 is as follows:

"You are further instructed that in fixing the amount of damages you are not to take into consideration what is generally known as profit from casinghead gas or the benefits or profits that may be derived from the making of casinghead gasoline; that as a matter of law casinghead gasoline is a product of the oil and not a product of the gas; and that the owner of the gas is not entitled to the products therefrom derived from casinghead gas, but is entitled to the gas itself."

It is insisted that instruction No. 10 is in substance and effect the same as an instruction that plaintiffs were not entitled to any casinghead gas; that by such instruction, the court limited plaintiffs' rights in the gas to such gas only as could be segregated and separated from the oil by means of an extra string of casing and pipe and bradenheads, and as casinghead gas could not be so separated, the jury was given to understand that plaintiffs were not entitled to any casinghead gas; that by instruction No. 26, the jury were told that casinghead gasoline was a product of the oil, and not a product of the gas, and as casinghead gasoline is made from casinghead gas, the effect of that instruction was to advise the jury that casinghead gas was a product of the oil, and not gas at all; that the jury understood by this instruction that the plaintiffs were not entitled to the casinghead gas, but the defendants were entitled to it as a part of the oil, which, of course, they had not sold to the plaintiffs.

We fail to see any valid objection to that part of instruction No. 10 complained of. By it, the jury was told that the defendants were not obliged to use any other method or means of segregating or separating the gas from the oil than those provided for in the contract. We think this is correct. The parties had agreed on means by which the gas was to be saved and delivered to the plaintiffs, viz. by the use of casing, pipe, and bradenheads. The defendants were not required to use any other means of separating the gas from the oil. If casinghead gas could not be separated from the oil and delivered to the plaintiffs in the manner provided for in the contract, then it must not have been such gas as was in contemplation of the parties when the contract was made.

By instruction No. 26, the jury was told that in fixing the amount of the plaintiffs' recovery, it should not take into consideration what was generally known as profit from casinghead gas or benefits or profits that might be derived from the making of casinghead gasoline; that the owner of the gas was not entitled to the products derived from casinghead gas, but was entitled to the gas itself.

It is clear that when the contract was entered into, the parties had no thought of casinghead gas or gasoline manufactured therefrom. The plaintiffs were engaged in the business of selling gas upon the market, and it was gas suitable for sale to their customers that was contemplated. It is true that by the terms of the contract, the defendants sold, transferred, and conveyed all the gas then being produced or that might thereafter be produced on the premises, except sufficient thereof for certain operations of the defendants, but it was also agreed that whenever a well was drilled in, the plaintiffs, at their option, might elect to take the gas therefrom by furnishing the necessary casing, pipe, and bradenheads to be placed in the well to preserve and protect said gas. Obviously, the parties had in mind only gas that could be saved and conveyed by the use

of an extra string of casing or pipe and bradenheads, and if casinghead gas could not be separated from the oil, and saved and conveyed by the use of such appliances, the plaintiffs were not entitled thereto.    Indeed, it evidently had not occurred to the plaintiffs that they were entitled to the casinghead gas until after their suit was brought, for this action was not based upon the claim that they were entitled thereto, but was brought upon the theory that defendants had by failing and refusing to properly case said wells at proper times, and by failing to use proper means of furnishing the gas to the plaintiffs, wasted the gas and thereby prevented the plaintiffs from obtaining the same.    The court was correct in instructing the jury that the plaintiffs were not entitled to the profits derived from the manufacture of casinghead gasoline. That portion of this instruction which reads, "that as a matter of law, casinghead gasoline is a product of the oil and not a product of the gas," is in conflict with the opinion of this court in Hammett Oil Co. v. Gypsy Oil Co., No. 10,533, 18 Okla. App. Ct. Rep. 155, decided April 18, 1922, wherein it was held that, under the facts in that case, gasoline manufactured from casinghead gas was neither oil nor gas within the terms of the lease there under consideration, and the same may be said under the facts in the case at bar.    But it is not apparent to us that this error was prejudicial to the plaintiffs. They were not entitled to the casinghead gas because, as heretofore stated, casinghead gas could not be separated from the oil and saved by use of the appliances mentioned in the contract, and such contract does not contemplate any gas other than that which might be secured by means of these appliances.    The court properly instructed the jury that the plaintiffs were not entitled to the profits derived from the manufacture of casinghead gasoline, and had he stopped there, the instruction would not have been objectionable, and the fact that he may have been mistaken in telling the jury that casinghead gasoline is a product of the oil and not a product of the gas, is in our opinion, immaterial, as the plaintiffs were not in any event entitled to the profits derived from the manufacture of casinghead gasoline. By this instruction the court advised the jury that the plaintiffs were entitled to the gas itself, meaning, of course, the casinghead gas, and, as we have already seen, they were not entitled thereto, so it was error to give this part of the instruction, but the action of the court in this respect was more favorable to the plaintiffs than to the defendants, and the plaintiffs will not be heard in this court to question the action of the trial court

which, though erroneous, was in their favor.

It has been repeatedly held by this court that the giving of an erroneous instruction, which was more favorable to the plaintiff in error than to the defendant in error, will not constitute error which demands a reversal of the judgment. Gorman v. Hargis, 6 Okla. 360, 50 Pac. 92; Chicago, R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 Pac. 662; Terrapin v. Barker, 26 Okla. 93, 109 Pac. 931; Mayo v. Thede, 73 Oklahoma, 175 Pac. 348.

No complaint is made of the other instructions given by the court, and by these instructions the issues tendered were properly submitted to the jury.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.