## PURE OIL CO. v. TAYLOR.

No. 31462. Dec. 5, 1944.

Rehearing Denied Jan. 30, 1945.

*155 P. 2d 529.*

Alvin Richards, of Tulsa, and Hamilton & Kane of Pawhuska,, for plaintiff in error.

Frank T. McCoy, John T. Craig, and John R. Pearson, all of Pawhuska, for defendant in error.

RILEY, J. Defendant in error, hereinafter referred to as plaintiff, commenced this action against plaintiff in error, hereinafter referred to as defendant, to recover damages alleged to have been sustained as a result of injury to his cattle caused by their drinking water alleged to have been polluted by salt water escaping from defendant's oil wells located within the pasture used by plaintiff and others.

Plaintiff's petition alleges that during the month of July, 1941, he was in the possession of a described pasture of approximately 2,640 acres; that he was the owner of the cattle designated in the petition, consisting of 75 cows and 40 calves, kept on said land; that defendant was a corporation, engaged in the oil mining business in Osage county. It owned and operated an oil mining lease upon 80 acres of land, particularly described, within said pasture; that during said month of July, 1941, salt water, oil and other deleterious substances escaped from defendant's oil mining operations in violation of section 11580, O.S. 1931 (52 O.S. 1941 § 296); that said substances flowed

over the surface of the land and into fresh water used for watering plaintiff's stock and down a certain draw or creek running near defendant's wells on said lease, thereby poisoning and polluting the water which was left standing in open pools; that thereafter said cattle drank said poisoned and polluted water, which killed and injured the following stock, to plaintiff's damage in the amount listed, as follows:

| | |
|---|---|
| 11 cows died | $ 825.00 |
| 3 cows badly injured, lost calves | 105.00 |
| 61 cows injured | 1220.00 |
| 40 calves injured | 600.00 |

Prayer for judgment in the sum of $2,750.00.

Defendant answered, admitting that it was a corporation engaged in the oil mining business in Osage county, and that it was engaged in operations on the 80 acres mentioned in plaintiff's petition for oil and gas, but denied that it had at any time permitted oil or other deleterious substances to escape from its wells and flow over the surface of the land and into fresh water, thereby causing injury to plaintiff's cattle. The answer alleged that in the operation of said lease it used all known modern methods of operating and disposing of salt water and deleterious substances produced from wells, and that if plaintiff's cattle had been injured, as alleged, the injury was not occasioned by the cattle drinking salt water or injurious substances from defendant's wells.

The issues thus joined were tried to a jury, resulting in a verdict and judgment in favor of plaintiff and against defendant in the sum of $1,041, and defendant appeals.

It is first contended that the court erred in refusing an instruction requested directing the jury to return a verdict in favor of defendant. It is not contended that there was no competent evidence tending to prove plaintiff's allegations as to some injury to plaintiff's cattle caused by their drinking salt water which had escaped from defendant's wells. Defendant invokes a proposition of law that in a suit against defendant alleging tortuous injury to plaintiff's cattle where the evidence shows that at least some of the injury was by another, and plaintiff has received compensation from such other person for that injury, and there is no evidence which will enable the jury to separate the amount of damages, if any, caused by defendant from that caused by the third party and for which plaintiff has been paid, it is error to submit the cause to the jury. It is contended that this is such a case.

The evidence is that about the 10th of April, 1941, plaintiff placed in a large pasture, containing about 3,400 acres or more, 304 head of mixed cattle. In the same pasture two other men were pasturing from 75 to 100 head of cattle. Plaintiff had a surface right lease to use 2,640 acres within the pasture and the other parties had a like right to the remainder. Within this pasture there were two oil mining leases. One covered the northwest quarter of section 25, township 22 north, range 7 east, and was owned and operated by the Bay Oil Corporation and two individuals, J. R. Higgins and Gregg E. Sawyer. The other oil lease covered the north half of the northeast quarter of said section 25, and was owned and operated by defendant. It was developed at the trial, on cross-examination of plaintiff, and over his objection, that plaintiff had laid claim against the Bay Oil Corporation and others for damages to part of his cattle because of the escape of salt water from their wells, occurring on or about May 23, 1941; that on or about June 19, 1941, the Bay Oil Corporation and others had settled with plaintiff for such damages and paid him the sum of $1,250 "in complete satisfaction of all damages resulting to said cattle from the drinking of salt water or oil from the premises owned by the Bay Oil Corporation, J. R. Higgins and Gregg E. Sawyer, which damages are now apparent or which may become apparent at a later date."

Plaintiff contends that all this evidence was incompetent and not within the issues. Defendant contends that it was admissible under its general denial.

The question is whether there is sufficient competent evidence of any injury by the Bay Oil Corporation and associates to the 75 cows and 40 calves mentioned in the petition. We have set out somewhat at length the allegations of the petition and answer herein. There is no allegation in defendant's answer that any of the cows or calves here involved were injured by the Bay Oil Corporation and associates or that such injury was a part of the claim for damages for which the Bay Oil Corporation and associates paid plaintiff $1,250. But on cross-examination of plaintiff, over his objection, plaintiff testified that he had complained to the Bay Oil Corporation and associates that they had, on or before May 23, 1941, injured 30 head of his cattle and that in the negotiations for settlement of the claim, he had told representatives of the Bay Oil Corporation that some of his cattle other than the 30 head might have been injured but that he had not found them, though he had not worked them closely. Defendant produced as its witness Jesse J. Worten, the attorney and representative of the Bay Oil Corporation and associates in the settlement of plaintiff's claim for damages, who testified that on or about June 12 or 13, 1941, he went with plaintiff to examine the cattle plaintiff claimed were injured by the Bay Oil Corporation and associates; that at that time plaintiff had 28 head of cattle, which he claimed had been injured, enclosed in a small "trap" or pasture, for inspection of the attorney and other representatives of the Bay Oil Corporation; that plaintiff at that time told the witness:

". . . . 'Well, I have got injury to some of these other cattle that are in this other pasture that are not in this trap.' He said, 'My whole herd has been— that salt water has been accessible to them,' and he said they all may have some injury. I said, 'Now, Carl, I told you to have them come up here that was injured,' and he said, 'I could not drive my whole herd of cattle up here'; and that was about the extent of the conversation along that line, but he said, 'If you want to see the rest of them they are up and down this ridge, and you can see them'; and we did."

This is in substance the evidence which defendant contends conclusively shows that a part of the cows and calves involved in this action were injured by the Bay Oil Corporation and others, and that such injury was in part included in the settlement with the Bay Oil Corporation and others.

Had that been all the evidence on that point it would not have been sufficient to conclusively prove that part of the injury for which plaintiff sued in this case had been compensated in the settlement with the Bay Oil Corporation and others. At most, it would have been sufficient to establish a possibility of such partial payment or to give rise to a surmise that such might have been the case.

On re-direct examination plaintiff testified:

"Q. When you discovered this salt water of the Bay's and found some cattle were injured, what did you do with the cattle you found injured? A. Gathered them out of there and put them in a trap and took them up to the house. Q. Did you get them clear out of this pasture? A. Yes, sir. Q. Did you take out at that time all the cattle that showed any evidence of being injured by salt water? A. Yes, sir, we did. . . . Q. Are you certain then that these cattle that you are asking the Pure to pay the damage on could not have been in any salt water over on the Bay lease? Mr. Hamilton: We object to that as a very wild conclusion. The Court: Overruled. Mr. Hamilton: Give us an exception. A. Yes, sir, I am sure that there didn't any of those get into salt water over there. By Mr. McCoy: Q. Counsel asked you something about what you told the Bay. I wish you would just recite the substance of that conversation you had with the Bay men. He asked you about what you told him when you tried to settle for

those 30 head, now just tell us nearly as you can that conversation. A. Well, when I was trying to settle with them, I gathered all the cattle out that had gotten into the salt water, and he wanted me to run up the cattle, he said no, I have all of them I am pretty sure, and I told him that there might be others, but I hadn't found them, and there never did any others show any indications of being damaged in any way. . . . Q. Are any of the cattle involved in this lawsuit or were any of the cattle involved in this lawsuit injured in any way by the Bay Oil Company? All the cattle that were injured by them were paid for by the Bay and were immediately removed therefrom? A. Yes, sir, I moved them back to my east ranch."

The evidence was uncontradicted. It cannot be said as a matter of law that the evidence conclusively shows that some of the injury to the cattle here involved was by one other than the defendant. It was not error to refuse the requested instruction for a directed verdict for the defendant.

Defendant's second and third propositions go to the refusal of the court to give two instructions requested by the defendant, and they are presented together. By requested instruction No. 6 defendant sought to have the court instruct that if the jury should find from the evidence, facts, and circumstances any proof that any of the cattle mentioned in plaintiff's petition were injured from drinking salt water, oil, or other deleterious substances from the lease belonging to the Bay Oil Corporation, J. R. Higgins, and Gregg E. Sawyer, on or about May 23, 1941, and that said cattle were still injured therefrom at the time plaintiff claimed said cattle were injured by drinking water contaminated with salt water or other deleterious substances escaping from the lease of the defendant, the jury could not return a verdict for plaintiff unless the plaintiff had established to the satisfaction of the jury by a preponderance of the evidence that plaintiff's cattle had been injured by drinking water contaminated with salt, oil, or other deleterious substances coming from defendant's lease, and also that the damages to plaintiff's cattle that

were injured by contamination coming from defendant's lease was more than $1,250.

Defendant's instruction No. 7 requested of the court reads:

"You are further instructed that if you find that any of the cattle mentioned in plaintiff's petition had been injured on or about May 23, 1941, from drinking water contaminated with salt water, oil or other deleterious substances from the lease belonging to Bay Oil Corporation, J. R. Higgins and Gregg E. Sawyer and that said cattle were still injured therefrom at the time plaintiff claims said cattle were injured by drinking said water contaminated with salt water, oil and other deleterious substances escaping from the lease of the defendant and if you further find by a preponderance of the evidence that said cattle were also injured or some of them died as a result of drinking water contaminated by salt water, oil or other deleterious substances coming from defendant's well or wells and if you further find that plaintiff's entire damage as a result thereof was in a sum greater than $1,250.00, you should return a verdict for the plaintiff for the damage between the total amount of his damages and the sum of $1,250.00."

Both were refused. Defendant asserts that it is definitely and positively established that there was injury and damage to at least a portion of the cattle mentioned in plaintiff's petition from their having drunk salt water and oil escaping from the lease of the Bay Oil Corporation and associates, and that it is established beyond controversy and admitted by plaintiff that he received $1,250 from the Bay Oil Corporation and associates for any and all injury done to any of this 304 head of cattle. Both requested instructions were predicated upon the theory that at least a portion of the cattle included in plaintiff's petition were injured about May 23, 1941, from having drunk salt water, etc, coming from the lease of the Bay Oil Corporation and others, and that they were still injured in July, 1941, the time when plaintiff claims that the cattle mentioned in the petition were injured from drinking water, etc., coming from defendant's lease. There is no

evidence that any of the cattle mentioned in plaintiff's petition were cattle injured in May, 1941, for which plaintiff was paid by the Bay Oil Corporation and others. There is some evidence from which it might be inferred that some of plaintiff's 304 head of cattle, other than the 28 head which plaintiff had in the "trap" for inspection by the attorney and other representatives of the Bay Oil Corporation on or about June 12, 1941, were injured. There is no evidence that if there were such other cattle injured any of them were included in the cattle mentioned in plaintiff's petition. Plaintiff had 304 head of cattle in the pasture in May, 1941. Twenty-eight, and possibly others, were injured on or about May 23, 1941. Plaintiff testified positively that he removed 30 head of the cattle which he said were injured on May 23rd from the pasture long before July, 1941. Plaintiff's petition mentions only 75 cows and 40 calves, 115 in all. This would leave 169 head not mentioned in the petition and not included in the cattle removed from the pasture before July, 1941. The uncontradicted evidence is that none of plaintiff's cattle injured in May, 1941, were included in the 115 head mentioned in the petition. Furthermore, if any of the cattle mentioned in plaintiff's petition were among those injured in May, 1941, there is no evidence whatever that they were still injured on or about July 10, 1941.

There being no competent evidence to support the instructions as requested, there was no error in refusing the same. Smith v. Pulaski Oil Co. et al., 88 Okla. 47, 211 P. 1047.

Defendant's next contention is that the court erred in giving to the jury instruction No. 6, as follows:

"You are instructed that where the separate and independent acts of negligence of several persons or companies combine to produce directly a single injury, each is responsible for the entire result, even though his or its acts or neglect alone might not have caused the injury, and even though there is no concert of action among such persons or companies.

"In this case, evidence has been permitted to be introduced by the defendant of other sources from which salt water might have come to pollute the fresh water under the surface of plaintiff's land, and in this connection you are instructed that such evidence was admitted only for the purpose of showing whether or not the defendant was responsible for the pollution. That is to say, that if you believe from the evidence in this case that the defendant permitted salt water from their oil mining operations to escape and to pollute the fresh water under plaintiff's pasture, the fact that others might have also contributed to such pollution would be no defense for the defendant herein, and you could not consider for that purpose such evidence of pollution from other sources."

It is first asserted that this instruction states a theory of recovery on joint and several liability not raised by the pleadings; not covered by plaintiff's opening statement; and contrary to plaintiff's theory as presented by his evidence.

Plaintiff's cause of action as stated in his petition is upon the theory that 65 head of his cows and 40 head of his calves had been injured as a result of the sole tort of defendant. Plaintiff's testimony and that of his principal witnesses was in support of that theory. Defendant, over the objection of plaintiff, in its cross-examination injected the question of possible injury to the cows and calves mentioned in the petition and testimony of plaintiff by a previous injury on account of the tortuous acts of the Bay Oil Corporation and associates. Defendant also in cross-examination of plaintiff brought out the fact that plaintiff's pasture bordered on the Arkansas river. In presenting its defense, defendant produced as a witness O. F. Ewing, who testified in substance that he was familiar with the plaintiff's pasture and the Arkansas river, and then testified as follows:

"Q. Can you tell this jury whether the Arkansas river is fresh or salty at that point? Mr. McCoy: To which we object as incompetent, irrelevant and immaterial and not within the issues of

this case. The Court: If he knows at that time of year, he may answer. A. Well, that river at that time of the year was, I would say, more than bracky. By Mr. Kane: Q. Do you know of your own knowledge the source of the pollution for the Arkansas river over there, Mr. Ewing? A. Yes, sir. Mr. McCoy: To which we object as wholly incompetent, irrelevant and immaterial and not within the issue, and if somebody else contributed it is no defense. (Arguments) The Court: Well, I will let him testify as to the amount of salt water that he knows goes into the Arkansas river, but the jury will take knowledge of the fact or the court will that the Arkansas is polluted at this point on the river. I do. Mr. McCoy: Exception. A. Well, I have first hand knowledge of the case filed against—— Mr. McCoy: Let us confine it to July, 1941. A. All right, sir. The Court: Just what you know about the pollution that you know about? A. At the mouth of Buck creek, some three or four miles from the lease that empties directly into the Arkansas—— By Mr. Kane: What is that an eight inch line carrying—— Mr. McCoy: The same objection and unless this witness made the inspection in the month of July, 1941. The Court: Overruled, if he knows. Mr. McCoy: Exception. A. Salt water."

There is much controversy over whether this evidence was admissible under the pleadings. Defendant contends that it was admissible under its general denial. If inadmissible, it is in the case at the instance of defendant. If covered by the pleadings, it presents the question of possible pollution of the stock water in plaintiff's pasture at a different place from the pollution, if any, caused by defendant. As to whether the instruction complained of was proper, the evidence concerning the pollution of the Arkansas river is to be taken into consideration. Certainly the latter evidence tended to prove independent acts of other persons or companies which might have combined with the negligence of defendant to produce the single injury complained of by plaintiff. The evidence concerning the pollution of the Arkansas river was sufficient to justify the instruction complained of.

In Oklahoma City v. Miller, 179 Okla. 363, 65 P. 2d 990, it is stated:

"This court has consistently held that where independent acts of negligence of several combine to produce directly a single injury, each is responsible for the entire result, though his act or neglect alone might not have caused it."

Therein it is held:

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it."

Defendant in its reply brief contends that said instruction was in no way based upon the evidence relative to the pollution of the Arkansas river, but was intended to apply, and did apply only, to the evidence of pollution from the Bay Oil Corporation lease. This contention is completely refuted by the court's statement, to which no objection was made, while the testimony of defendant's witness Ewing was being taken. The court said:

"Well, I will let him testify as to the amount of salt water that he knows goes into the Arkansas river, but the jury will take knowledge of the fact or the court will that the Arkansas is polluted at this point on the river."

The court then told the jury:

"I do not want you to misunderstand my statement. I mean by that that the court of its own observation knows that the Arkansas river was a recipient of sewage. I did not mean to convey that it was salty to the extent of injuring an animal. I simply meant it was a filthy river. I did not want you to be misled by the statement. I think you all know as much as, about the Arkansas river, as I do, and the question of whether or not it was salty enough to injure the cattle would be all due to the evidence as to where the cattle drank in the river."

This clearly indicates that the court based instruction No. 6, in part at least, upon the testimony of the witness Ew-

ing. It is apparent that when the defendant produced that testimony it was intended that the jury should consider it in arriving at a verdict. If the evidence was competent, it was proper that the court should instruct the jury as to the law applicable.

Defendant also contends that by giving the instruction the court committed reversible error for the reason that "Subsurface pollution is brought into the case for the first time when this instruction was given to the jury."

The court did. in one place use the words "pollute the fresh water under the surface of plaintiff's land": and in another place, "pollute the fresh water under. plaintiff's pasture."

There was no plea and no evidence of subsurface pollution. Therefore, the instruction as given was inaccurate. In view of the whole record, it is apparent that the use of the word "under" was a mere inadvertence. The inadvertent use of the word "under," instead of "upon" or "in", could not have influenced the jury, because all the parties, the court, and the witnesses knew that plaintiff's cause of action was based upon alleged surface pollution. Had counsel called attention of the court to the inadvertence, it would doubtless have been corrected.

In Ed Semans & Co. v. Overholser & Avey, 116 Okla. 276, 244 P. 796, it is held:

"Mere inaccuracy of verbiage in an instruction to which proper exception is reserved is not reversible error where it is clear from all of the evidence and proceedings that such inaccuracy of language could not have misled the jury, and the instruction otherwise is fair and correct."

Under the record as a whole we find no substantial error.

Affirmed.

CORN, C.J., GIBSON, V.C.J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.